FILED

2016 Sep-20  AM 08:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **WEST MORGAN-EAST LAWRENCE WATER AND SEWER AUTHORITY, and TOMMY LINDSEY, LANETTE LINDSEY and LARRY WATKINS, individually, and on behalf of a class of persons similarly situated** | ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | Civil Action Number **5:15-cv-01750-AKK** |
| **3M COMPANY, DYNEON, L.L.C., and DAIKIN AMERICA, INC.,** | ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiffs in this case are West Morgan-East Lawrence Water and Sewer Authority (the "Authority"), in its individual capacity, and Tommy Lindsey, Lanette Lindsey, and Larry Watkins (collectively "Representative Plaintiffs"), who bring this action both individually and on behalf of a class of persons similarly situated.[1]  Federal jurisdiction is premised upon the diversity statute.  28 U.S.C. § 1332(a).  The Authority and Representative Plaintiffs (collectively "Plaintiffs")

---

[1] The proposed class consists of "all owners and possessors of property who use water provided by the West Morgan-East Lawrence Water and Sewer Authority, the V.A.W. Water System, the Falkville Water Works, the Trinity Water Works, the Town Creek Water System, and the West Lawrence Water Cooperative."  Doc. 39 at 19.

assert common law claims of negligence (Count I), nuisance (Count II), abatement of nuisance (Count III), trespass (Count IV), battery (Count V), and wantonness (Count VI) against 3M Company, Dyneon, L.L.C., and Daikin America, Inc.  Doc. 39.  Currently before the court is 3M and Dyneon's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. 46.  Daikin America also separately moved to dismiss the amended complaint, but later withdrew its motion.  *See* docs. 44, 61.  Notwithstanding the withdrawal of Daikin America's motion, the court will address the arguments presented therein, as 3M and Dyneon explicitly incorporated by reference all arguments asserted in Daikin America's former motion, and plaintiffs have had the opportunity to respond to both motions.  *See* docs. 47 at 1 n.1; 45, 54, 55, and 56.  For the reasons stated more fully below, the motion is due to be granted in part, and denied in part.[2]

## I.      STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere "labels and conclusions"

_____

[2] Defendants' motions to dismiss the original complaint, docs. 18, 20, are **DENIED** as moot.

or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. (citing *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (citations omitted) (internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

## II.    FACTUAL BACKGROUND[3]

This action arises out of defendants' discharge of wastewaters containing perfluorooctanoic acid (PFOA), perfluorooctanesulfonic acid (PFOS), and related chemicals into the Tennessee River near Decatur, Alabama.  Doc. 39 at 5–7.  Specifically, 3M and its wholly-owned subsidiary Dyneon own and operate manufacturing and disposal facilities in Decatur, which have released, and continue to release, PFOA, PFOS, and related chemicals into ground- and surface water, through which the chemicals are ultimately discharged into the Tennessee River.  *Id.* at 5.    Daikin America manufactures tetrafluoroethylene and hexafluoropropylene fluoropolymers, produces PFOA as a byproduct, and discharges PFOA, PFOS, and related chemicals into the Decatur Utilities Wastewater Treatment Plant.  *Id.* at 7.  The Wastewater Treatment Plant, in turn, discharges the wastewater into the Tennessee River.  *Id.*

Defendants discharge these chemicals thirteen miles upstream from the area where the Authority draws water that it supplies to local water utilities, or directly to consumers.  *Id.* at 10.  Although the Authority treats the water, unsafe levels of PFOA and PFOS remain in the drinking water because of these chemicals' stable

---

[3] For purposes of Fed. R. Civ. P. 12(b)(6), the plaintiffs' allegations are presumed true. As such, the facts are taken from the Amended Complaint, doc. 39.  *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)) ("When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'").  However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth.  *See Iqbal*, 556 U.S. at 662.

carbon-fluorine bonds and resistance to environmental breakdown processes.  *Id.* at 7.  Studies, including one by an independent science panel, have shown that absorption of these chemicals may cause long-term physiologic changes and damage to the blood, liver, kidneys, immune system, and other organs, and an increased risk of developing cancer, immunotoxicity, thyroid disease, ulcerative colitis, and high cholesterol.  Doc. 39 at 8.

Plaintiffs allege that defendants continue to discharge these chemicals into the Tennessee River despite knowing of the persistence and toxicity of PFOA and PFOS.  *Id.* at 10.  Further, defendants are aware that tests of the Authority's treated water have shown elevated levels of these chemicals.  *Id.* at 15.  The Authority has consistently found PFOA levels at 0.1 ppb and PFOS levels at 0.19 ppb in its treated water, where 0.07 ppb is the current[4] EPA Health Advisory Level for both of those chemicals.  *Id.* at 14–15, doc. 58-1 at 1–2.  As a result of these levels, the Authority has incurred costs of testing its treated water, implementing pilot programs to develop more effective methods for the removal of PFOA and PFOS, and attempting to locate a new water source.  Doc. 39 at 16.

Representative Plaintiffs and the proposed class are owners or possessors of property who consume water supplied by the Authority and other water utilities that receive water from the Authority.  *Id.* at 2.  They allege personal injuries from

---

[4] As of May 19, 2016.  *See* doc. 58-1 at 1.

their exposure to unsafe levels of PFOA and PFOS in their domestic water supplies, including elevated levels of those chemicals in their blood serum. *Id.* at 17. In 2010, the federal Agency for Toxic Substances and Disease Registry ("ATSDR") analyzed the blood serum of 121 customers of the Authority, including some of the Representative Plaintiffs and members of the proposed class, for PFOA and PFOS, and found an association between elevated levels of those chemicals and the use of drinking water supplied by the Authority. *Id.* In addition to personal injuries, Representative Plaintiffs and the proposed class claim diminution in their real property values, and out-of-pocket costs for purchasing water filters and bottled water. *Id.* at 18.

## III.   ANALYSIS

Defendants move to dismiss all six counts asserted in the amended complaint. The court addresses each count below.

### A.  Negligence (Count I)

Defendants argue that plaintiffs' negligence claims fail because they are time-barred (doc. 47 at 7), and do not plead a cognizable injury (doc. 45 at 6).

1.  The timeliness of plaintiffs' negligence claims

Focusing solely on the Authority's allegation that it knew about the discharge of the chemicals in 2009, and the Representative Plaintiffs' allegation that the ATSDR issued a report on the contamination in April of 2013, defendants

maintain that the negligence claims are barred by Alabama's two-year statute of limitations.  Doc. 47 at 17–18 (citing doc. 39 at 14, 17).  The contention is unavailing because, when a defendant commits a continuing tort, the statute of limitations is tolled until the defendant ceases the tortious conduct.  *AC, Inc. v. Baker*, 622 So. 2d 331, 335 (Ala. 1993).  As plaintiffs note, defendants continue to discharge PFOA and PFOS into the water supply and have taken no actions to remediate the contamination that has already occurred.  Doc. 54 at 25.  The continuous and repeated dumping of chemicals into the Tennessee River is the type of activity Alabama courts would recognize as a continuing tort.  *See Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 220–21 (Ala. 1983) (stating that a "defendant's repeated wrong to the plaintiff can constitute a 'continuous tort,' such as . . . when a plaintiff landowner seeks damages for the contamination of a well or stream") (citations omitted); *cf. Payton v. Monsanto Co.*, 801 So. 2d 829, 835 (Ala. 2001) ("Alabama law does not recognize a continuing tort in instances where there has been a *single act* followed by *multiple consequences*.") (emphasis added).  Thus, the court finds that the negligence claims are not time-barred.

2.  Legally cognizable injury

Transitioning to the question of injury, the amended complaint states that the Representative Plaintiffs and proposed class "have elevated levels of PFOA, PFOS, and related chemicals in their blood serum," and that those elevated levels

"cause long-term physiologic alterations and damage to the blood, liver, kidneys, immune system, and other organs."  Doc. 39 at 8.  Still, these plaintiffs do not claim that *they currently* have a disease as a result of their exposure.  *See Hinton v. Monsanto Co.*, 813 So. 2d 827, 829 (Ala. 2001) ("Alabama law has long required a manifest, present injury before a plaintiff may recover in tort."); s*ee also, e.g.*, *Houston Health Care Authority v. Williams*, 961 So. 2d 795, 810–12 (Ala. 2006) (alleged emotional distress consisting "simply" of fear of possible future infection from known exposure to fungus in a contaminated breast implant, without more, did not constitute a compensable legal injury); *Southern Bakeries, Inc. v. Knipp*, 852 So. 2d 712, 717–18 (Ala. 2002) (mere fear that exposure to asbestos could lead to asbestos-related disease, without more, did not constitute a compensable injury).  While the Representative Plaintiffs and the proposed class allege that their blood tests show elevated levels of PFOA and PFOS in their bodies, doc. 39 at 17, they do not allege that they have developed any disease or symptoms.  Rather, they allege only that the elevated levels "are *sufficient to cause* many of the health effects reported in recent studies . . . including cancer, immunotoxicity, thyroid disease, ulcerative colitis, and high cholesterol."  Doc. 39 at 17 (emphasis added).  Unfortunately, while their fear of injury is justified, under Alabama law, however, they have not suffered a "manifest, present injury," and their cause of action for negligence — at least with regard to *personal injuries* — has not yet accrued.

Therefore, as to their claim for personal injuries, the motion to dismiss is due to be granted for lack of ripeness.

The motion to dismiss is due to be denied, however, with respect to the other damages the Representative Plaintiffs and proposed class seek for the alleged negligence.  These include the costs of purchasing water filters and bottled water, and the diminution in value of their real properties.  *See* doc. 39 at 18, 23–24.

The motion is also due to be denied with respect to the Authority, which claims damage to its public image and also seeks expenditures for testing its treated water to identify PFOA and PFOS levels, implementing pilot programs to find more efficacious water treatment methods, and seeking a new water source. *See* doc. 39 at 16–17.

## B. Nuisance (Count II)

Defendants first assert that the nuisance claims are time-barred.  Doc. 47 at 17.  For the reasons set forth in Section III-A, *supra*, the court rejects that argument.

The amended complaint does not specify whether plaintiffs seek recovery under a public or private nuisance theory.  Defendants contend that plaintiffs have failed to adequately plead private nuisance because the alleged harm is not limited to a small number of persons, and that plaintiffs lack standing to bring a public

nuisance claim because they do not sufficiently allege "special damage."  Doc. 47 at 12.

### 1.  Private nuisance

"A private nuisance is one limited in its injurious effects to one or a few individuals."  Ala. Code § 6-5-121 (1975).  Plaintiffs allege in their amended complaint that the number of persons in the putative class "probably exceeds 25,000 people."  Doc. 39 at 19.  Thus, plaintiffs can hardly argue that the alleged nuisance is limited in its injurious effects to "one or a few individuals."  *See* § 6-5-121.  Moreover, the Alabama Supreme Court has categorized the contamination of a public waterway as a *public* nuisance.  *See Russell Corp. v. Sullivan*, 790 So. 2d 940, 952 (Ala. 2001) (citing *National Container Corp. v. State*, 189 So. 4 (1939); *People of the State of New York v. State of New Jersey*, 256 U.S. 296 (1921)) ("The discharge of contaminants into a public body of water constitutes a public nuisance.").  Thus, plaintiffs fail to state a claim of private nuisance.

### 2.  Public nuisance

For private plaintiffs to have standing to bring a claim for public nuisance, they must show "special damage" that is "different in kind and degree from the damage suffered by the public in general."  *See Sullivan*, 790 So. 2d at 951.  The Alabama Supreme Court stated in *Sullivan*, a case concerning the contamination of the public waterway Lake Martin, that the alleged nuisance in that case affected

"*anyone who would want to use and enjoy Lake Martin*, not just those who live on its banks." *Id.* at 953 (emphasis added).  The parallel argument here is that defendants have damaged the general public's ability to use and enjoy the Tennessee River.  The Authority's claimed special damage is that it sells water from the River, has incurred costs of testing the water for contamination levels and trying to remediate the problem, and has suffered damage to its "public image." Doc. 39 at 16–17.  The Representative Plaintiffs and the proposed class allege special damage on the basis that they consume the water in their homes, and defendants' actions have forced them to purchase water filters and bottled water, and decreased their real property values.  Doc. 39 at 18, 23–24.[5]

In light of the foregoing, defendants' motion is due to be granted with regard to private nuisance, and denied with regard to public nuisance.

### C.  Abatement of Nuisance (Count III)

As defendants state, plaintiffs' claim for "abatement of nuisance" is actually a request for equitable relief, as opposed to an independent cause of action. However, the court will briefly address defendants' arguments in support of their motion to dismiss this "claim," *i.e.*, that plaintiffs have failed to adequately plead their underlying nuisance claim, or that defendants were negligent in creating a

---

[5] Defendants argue that the Representative Plaintiffs and the proposed class cannot show "special damage," because the contamination of the domestic water supply affects upwards of 25,000 persons.  Doc. 47 at 14.  That argument is misplaced, because, although 25,000 is not "one or a few individuals," it also is not the "general public."

nuisance.  Doc. 47 at 15 (citing *Birmingham v. Fairfield*, 375 So. 2d 438, 441 (Ala. 1979)) ("[P]roof of negligence is required to sustain injunctive relief ordering abatement of a nuisance when the conduct giving rise to the conditions complained of was expressly authorized by legislative act.").  For the reasons discussed in Section III-B, *supra*, plaintiffs have stated a claim for public nuisance.  Moreover, this court finds that plaintiffs have pleaded sufficient facts to state a claim for negligence.  Finally, to the extent that defendants rely upon *Birmingham v. Fairfield*, defendants have not at this stage proven that their PFOA and PFOS disposal methods are "expressly authorized by legislative act."  *See* 375 So. 2d at 441.  For these reasons, defendants' motion is due to be denied as to Count III.

### D.  Trespass (Count IV)

To succeed on a claim of indirect trespass,[6] plaintiffs must show:  (1) an invasion affecting an interest in the exclusive possession of their property; (2) an intentional doing of the act which results in the invasion; (3) reasonable foreseeability that the act done could result in an invasion of the plaintiffs' possessory interest; and (4) substantial damages to the res.  *Borland v. Sanders Lead Co., Inc.*, 369 So. 2d 523 (Ala. 1979).  Defendants hone-in on the fourth

---

[6]  This claim can only be construed as one for indirect, as opposed to direct, trespass. "[A]n indirect trespass occurs where the trespasser releases a 'foreign polluting matter' beyond the boundaries of his property, knowing to a 'substantial certainty' that it will invade the property."  *Russell Corp. v. Sullivan*, 790 So. 2d 940, 946–47 (Ala. 2001) (quoting *Rushing v. Hooper-McDonald, Inc.*, 300 So. 2d 94 (Ala. 1974)).

element, stating that the amended complaint "does not properly allege any damage at all to plaintiffs' real property, much less 'substantial' damage, from the introduction of PFC-containing water."[7]  Doc. 45 at 14.  The court agrees.

Plaintiffs argue that they sufficiently allege substantial damages to their real properties by stating in the amended complaint that they "own and possess property served by The Authority and other water utilities that [have] been invaded by the Defendants' chemicals."  Doc. 54 at 30 (citing doc. 39 at 28).  They further allege that "Defendants' continuing trespass has impaired Plaintiffs' *use of their property* and has caused them damages by *diminishing its value*."  Doc. 39 at 28 (emphasis added).  Allegations regarding an impairment of plaintiffs' *use* of their property are precisely the type the *Borland* court found to sound in nuisance — not trespass.  In *Borland*, the Alabama Supreme Court noted a distinction between *damage to the res* and *diminution in a property's use value*.  The Court stated that the "classic cases of the barking dog, the neighboring bawdy house, noise, smoke, fumes, or obnoxious odors generally invoke the law of nuisance.  *These intrusions do not typically result in any actionable damage to the Res*; the injury caused by such acts usually results in a *diminution of the use value of the property* causally related to the harmful conduct made the basis of the claim."  396 So. 2d at 530

---

[7] Defendants also move to dismiss the trespass claim based on plaintiffs' purported "consent[]."  Doc. 45 at 13–14.  In light of the court's finding that plaintiffs have failed to sufficiently plead "substantial damages to the res," it will not address this alternative argument.

(emphasis added).  Therefore, when, as here, there is no allegation of physical or structural damage to the res — more specifically, for instance, Representative Plaintiffs do not allege that the PFOA and PFOS in their domestic water supply have caused their pipes to erode, or that the presence of those chemicals in their lawn irrigation systems has damaged their grass — they have failed to plead the "substantial damages to the res" required for an indirect trespass claim.

The Authority similarly fails to plead any facts supporting a claim of damage to its real property.  Rather, the Authority merely alleges damages to its property interests in "its source of water, a water treatment plant, water distribution system, and offices."  Doc. 39 at 28.  Nowhere in the amended complaint does the Authority allege that its water treatment plant, water distribution system, or offices have sustained structural damage as a result of the PFOA and PFOS from the River.

Accordingly, the motion to dismiss the trespass claim is due to be granted.

### E.  Battery (Count V)

To state a claim for battery under Alabama law, a plaintiff must establish that:  (1) the defendant touched the plaintiff; (2) the defendant intended to touch the plaintiff;[8] and (3) the touching was conducted in a harmful or offensive

---

[8] A plaintiff can establish "intent" by showing that the defendant "desires or is *substantially certain* of the injury to result from his or her act."  *Ex parte Capstone Bldg. Corp.*, 96 So. 3d 77, 96 (Ala. 2012) (emphasis added).

manner.  *Ex parte Atmore Community Hosp.*, 719 So. 2d 1190, 1193 (Ala. 1998) (citing *Surrency v. Harbison*, 489 So. 2d 1097, 1104 (Ala. 1986); Rest. (2d) of Torts § 18 (1965)).  Representative Plaintiffs and the proposed class allege that defendants "touched or contacted" them "through their release of PFOA, PFOS, and related toxic chemicals" into plaintiffs' water supply.  Doc. 39 at 29.  Those plaintiffs further allege that defendants "knew that their intentional acts would be substantially certain to result in such contact," and that such touching or contact "was and is harmful and offensive."  *Id.*

### 1.  Lack of physical injury

Defendants raise three arguments in support of their motion.  First, they argue that plaintiffs have suffered no manifest physical injury.  Doc. 45 at 15–16. This contention is unavailing, because a claim for battery in Alabama does not require an actual injury to the body as an element of the claim.  *See, e.g.*, *Harper v. Winston Co.*, 892 So. 2d 346, 353 (Ala. 2004); *Surrency v. Harbison*, 489 So. 2d 1097, 1104 (Ala. 1996).

### 2.  Consent to the touching or contact

Second, defendants contend that dismissal is warranted because plaintiffs consented to the contact by voluntarily drinking the water.  Doc. 45 at 16. Plaintiffs claim that they did not "consent to their ingestion of and exposure to these toxic chemicals," and, alternatively, allege that "consent is at most an

affirmative defense to this claim that presents factual issues that cannot be resolved on a motion to dismiss." Doc. 54 at 34 (citing *Hester v. Brown*, 512 F. Supp. 2d 1228, 1232–33 (M.D. Ala. 2007)). Indeed, it is apparent from the face of the amended complaint that Representative Plaintiffs and the proposed class use water filters or buy bottled water now, and once, voluntarily consumed the water prior to learning of the contamination. *See* doc. 39 at 17–18. Thus, the question this court must resolve is whether the voluntary ingestion of water from the Authority (at least before they learned of the contamination) constitutes consent to the ingestion of the contaminants in the water. Because defendants failed to cite any Alabama law that suggests that plaintiffs' consumption of the water constituted consent to their uninformed ingestion of PFOA and PFOS, the court will defer addressing this issue until the summary judgment stage.

### 3.  Intent

Finally, defendants contend that dismissal is warranted on the battery claim because defendants did not specifically intend to touch or contact plaintiffs. Doc. 45 at 16–17. Intent can be satisfied by substantial certainty. *See Ex parte Capstone Bldg. Corp.*, 96 So. 3d at 96. Plaintiffs allege that defendants are aware that they discharge PFOA and PFOS into the water, and that they know those chemicals appear at harmful levels in the treated water sold by the Authority. Doc. 39 at 15. These facts are sufficient to give rise to a reasonable inference that

defendants discharge PFOA and PFOS into the Tennessee River with substantial certainty that the water will be used for drinking and other household purposes.

For all these reasons, the motion to dismiss the battery claim is due to be denied.

### F.  Wantonness (Count VI)

Wantonness is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."  *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (citing *Bozeman v. Central Bank of the South*, 646 So. 2d 601 (Ala. 1994)).  Plaintiffs allege in the amended complaint that defendants owe a duty of reasonable care "in their manufacturing, use, and disposal operations to prevent the discharge of toxic chemicals" into the "water supply and onto the property of Plaintiffs."  Doc. 39 at 30.  Plaintiffs further allege that defendants have known for many years that PFOA, PFOS, and related chemicals accumulate in the human body, are toxic, and cannot be effectively removed by conventional wastewater treatment methods.  *See* doc. 39 at 10–11.  In spite of that duty and their knowledge of the risk of harm, defendants discharge wastewaters containing these chemicals into the Tennessee River, thirteen miles upstream of the Authority's source of water for its consumers.  Doc. 39 at 2.

Defendants contend that plaintiffs fail to state a claim of wantonness, because:  (1) plaintiffs do not allege any cognizable injury; and (2) plaintiffs have not sufficiently alleged that defendants knew of the "probability" of injury.[9]  Doc. 45 at 17–18.

1.  Injury

Defendants state that, in *Hinton v. Monsanto Co.*, 813 So. 2d 827 (Ala. 2001), a polychlorinated biphenyl exposure case, the Alabama Supreme Court "specifically rejected a wantonness claim by a plaintiff whose only claimed 'injury' was exposure to defendant's chemicals."  Doc. 45 at 18.  The *Hinton* plaintiff, who had not developed any disease or illness, sought medical monitoring under theories of negligence, wantonness, and strict products liability.  *Hinton*, 813 So. 2d at 828.  The Court rejected the claim, holding that the plaintiff did not assert a cognizable claim for medical monitoring based on his "exposure to a hazardous substance, without a present injury attributable to that exposure."  *Id.*  To the extent that the plaintiffs here were only seeking claims for personal injuries, their claims would fail under *Hinton*.   However, *Hinton* is distinguishable because the Representative Plaintiffs and the proposed class are also seeking damages for

---

[9] Defendants also assert that the wantonness claims are time-barred.  Doc. 47 at 17.  For the reasons set forth in Section III-A, *supra*, the court rejects that argument.

diminution in their real property values, the costs of purchasing water filters and bottled water, and mental anguish.[10]

### 2.  Defendants' knowledge of the "probability" of injury

Defendants next argue that plaintiffs fail to sufficiently allege knowledge of the "probability" of injury.  Doc. 45 at 18.  As defendants put it, the amended complaint "does not allege (even in conclusory fashion) that defendants have acted with knowledge that consuming water with PFC concentrations within EPA health advisory levels would 'probably' cause mental anguish to unknown customers of the Authority."  *Id.* at 19.  To the contrary, plaintiffs have alleged that defendants "have long been aware of the persistence and toxicity of PFOA, PFOS, and related chemicals," but "knowingly and intentionally discharged and continue to discharge these chemicals into the Tennessee River in Decatur, Alabama, 13 miles upstream of the water supplies used by Plaintiffs."  Doc. 39 at 10.  Plaintiffs also allege, for example, that "a Materials Safety Data Sheet produced by Defendant 3M in 1986 warned that PFOA should be disposed of only through incineration or at specially

---

[10] Defendants assert that because plaintiffs were not physically injured or placed in immediate risk of harm, they cannot recover emotional distress damages.  *See* doc. 45 at 18 (citing *Hardesty v. CPRM Corp.*, 391 F. Supp. 2d 1067, 1073 (M.D. Ala. 2005)).  That is not an accurate statement of Alabama law.  *See, e.g., Birmingham Coal & Coke Co. v. Johnson*, 10 So. 3d 993, 999 (Ala. 2008) (damages for mental anguish are not recoverable for *negligence* except when the plaintiff has suffered a physical injury as a result of the negligent conduct, or was placed in an immediate risk of physical injury by that conduct); *Chamblee v. Duncan*, 188 So. 3d 682, 693 (Ala. Civ. App. 2015) (citing *Brown v. First Federal Bank*, 95 So. 3d 803, 818 (Ala. Civ. App. 2012)) ("[D]amages for mental anguish are recoverable in wantonness cases, regardless of whether the plaintiff has suffered a physical injury or was placed in an immediate risk of such injury.").

designed, properly lined landfills for hazardous chemicals, *not discharged into rivers and not dumped into the ground*."   Doc. 39 at 11 (emphasis added). Moreover, plaintiffs allege that the Authority contacted 3M in 2009 to discuss the prevalence of PFOA and PFOS in its treated water supply.  Doc. 39 at 15.  Finally, plaintiffs allege that 3M "has known for at least 35 years that PFOA, PFOS, and related chemicals are toxic."  Doc. 39 at 10.  The foregoing allegations, accepted as true for purposes of a Rule 12(b)(6) motion, give rise to a reasonable inference that defendants have discharged, and continue to discharge, PFOA and PFOS — toxic chemicals they know are not removed by conventional water treatment methods — into a known source of drinking water.

Thus, the court finds that the motion to dismiss the wantonness claim is due to be denied.

## IV.  CONCLUSION AND ORDER

For the reasons stated above, 3M and Dyneon's motion to dismiss is **GRANTED** as to plaintiffs' trespass claim (Count IV), and that claim is **DISMISSED WITH PREJUDICE**.  The motion is **DENIED** as to the negligence (Count I), nuisance (Count II), abatement of nuisance (Count III), battery (Count V), and wantonness (Count VI) claims, and plaintiffs may proceed with those claims, with the understanding that they may not pursue a private nuisance claim or negligence claims based on personal injuries.  The court will reserve ruling on

the sufficiency of the class allegations until a later date.  *See United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 882 (11th Cir. 2003) (stating, in the context of ruling on a Rule 12(b)(6) motion, that"[i]n a class action, it is sufficient that a complaint generally give the defendant notice of the nature and scope of the plaintiffs' claims; it is not necessary that the class representatives plead evidence or otherwise meet any burden beyond the minimal Rule 8 standard.").

The parties are **DIRECTED** to submit a revised Rule 26(f) report by October 31, 2016.  Plaintiffs must file their consolidated complaint, as discussed in doc. 64, within seven (7) calendar days of the issuance of this order.  Defendants' answers are due within twenty-one (21) calendar days thereafter.

**DONE** the 20th day of September, 2016.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE