FILED

2016 Nov-17  PM 06:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| WEST MORGAN-EAST LAWRENCE WATER AND SEWER AUTHORITY, and TOMMY LINDSEY, LANETTE LINDSEY and LARRY WATKINS, individually, and on behalf of a Class of persons similarly situated, | ) ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| vs. | ) ) | Case  No. 5:15-cv-01750-AKK **CLASS ACTION** |
| 3M COMPANY, DYNEON, L.L.C., and DAIKIN AMERICA, INC., | ) ) ) ) | **JURY DEMAND** |
| **Defendants.** | ) ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF *PRO TANTO* CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.    INTRODUCTION …….…..…………………….................. 3

II.   FACTUAL BACKGROUND……………………………............. 4

III.  PROCEDURAL HISTORY……………………………… 8

IV.   THE PROPOSED RELIEF…………………………………… 10

**V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS
       WARRANTED**………………………………………............  **13**

    **A. Standards for Preliminary Approval of Class**…………...........  **13**
    **Settlement.**

    **B.   Application of the Bennett Factors**……………………….....  **14**

        **1.    The likelihood of Success at Trial**……………………...  **14**

        **2.   The Range of Possible Recovery and the Point on or
              Below the Range of Possible Recovery at Which a
              Settlement is Fair, Adequate and Reasonable**……………… **16**

        **3.   The Complexity, Expense and Duration of Litigation**............ **18**

        **4.   The Substance and Amount of Opposition to the
              Settlement**………………………………………….......... **19**

        **5.   The Stage of Proceedings at Which the Settlement Was
              Achieved**……………………………………………… **19**

**VI.   THE COURT SHOULD CONDITIONALLY CERTIFY THE
       SETTLEMENT CLASS**……………………………….....................**20**

    **A. The Settlement Class Definition**………………………………**20**

    **B. Rule 23(a) Requirements Are Satisfied**…………………………**21**

    **C. Rule 23(b) Requirements Have Been Satisfied**…………………**24**

**VII.  THE COURT SHOULD APPROVE THE PROPOSED CLASS
       NOTICE TO CLASS MEMBERS**…………………………………  **29**

**VIII. ATTORNEY FEES AND EXPENSES**………………………………  **31**

**IX.   PROPOSED SCHEDULE AND ACTION ITEMS**………………..  **31**

**X.    CONCLUSION**……………………………………..………..  **33**

## I.      INTRODUCTION

The Plaintiffs are the West Morgan-East Lawrence Water and Sewer Authority ("Authority") and a Class consisting of all owners or possessors of real property who use water from the Authority, either as direct customers or as customers of other utilities to which the Authority sells water.  They filed this lawsuit to obtain remedies, including injunctive relief, for the pollution of their drinking water source, the Tennessee River, by defendants' discharges of perfluorinated chemicals ("PFCs").  Plaintiffs have reached a proposed *pro tanto* settlement with Defendant Daikin America, Inc. ("Daikin") that is fair, adequate, and reasonable, and seek preliminary approval of this proposed class settlement by the Court.

The settlement requires Daikin to fund the installation of a water treatment system at the Authority's facility, which ensures Class Members' water supply is substantially free of PFCs.  As an ancillary matter, the settlement will also provide Class Members with restitution of certain monies paid to the Authority.  In exchange for the Class Benefits, the Class Members and the Authority will resolve their claims against Daikin contained in the Consolidated Individual and Class Complaint and will release Daikin only for those individual and class claims in accordance with the terms of the proposed *Pro Tanto* Individual and Class Settlement Agreement ("Settlement") attached to this motion as Exhibit  1 .  The settlement will preserve Class Members' right to assert claims against Daikin for personal injuries and for

property damage unrelated to Authority-provided water. In addition, the settlement will preserve all of Class Members' claims against the remaining defendants, 3M Company ("3M") and Dyneon, LLC ("Dyneon").

Plaintiffs and Daikin (collectively, the "Parties") have moved for conditional certification of the Class and preliminary approval of the proposed Settlement as the first step in the settlement approval process. If, after reviewing the Settlement under the standards of Rule 23(e) of the Federal Rules of Civil Procedure, the Court preliminarily approves the Settlement, Interim Class Counsel will provide notice of the terms of the Settlement to the Class Members in a form that the Court approves. After it allows reasonable time for notice, the Court would hold a fairness hearing to consider the terms of the Settlement in detail and any objections or other comments that Class Members may submit to the Court. Accordingly, the Parties ask the Court to: (1) conditionally certify the Class for settlement purposes; (2) preliminarily approve the Settlement under Rule 23(e); (3) approve the proposed Notice Plan and form of the Class Notice, attached to the Settlement; (4) set a timeline for notice and for Class Members to object to the Settlement; and (5) schedule a fairness hearing to finally approve the Settlement.

## II.       FACTUAL BACKGROUND

PFCs are a class of fluorine-based organic chemicals, two of which are the main focus of this case. Perfluorooctanoic acid (PFOA) and perfluorooctane

sulfonate (PFOS) were used for decades in a variety of consumer products to make them more resistant to stains, grease, and water. PFOA was also used as a process aid in the manufacture of fluoropolymers.

Defendant 3M was the primary U.S. manufacturer of PFOA and PFOS. The 3M plant in Decatur began operating in 1961, and the related Dyneon plant began operating in 1996, eventually becoming a wholly owned subsidiary of 3M. The 3M plant produced millions of pounds of PFOA and PFOS and used these chemicals in its processes to produce other chemicals. Dyneon also used PFOA and PFOS in its processes. 3M and Dyneon phased out production and use of PFOA and PFOS by 2004. *See* Declaration of Barry W. Sulkin, attached as Exhibit 2.[1]

In 1991, 3M sold some of the undeveloped land at its Decatur facility to Daikin, which opened its own chemical manufacturing plant on the site in 1994. *See* Declaration of Ralph Werling, attached as Exhibit 3.[2] The Daikin plant used PFOA in the production of fluoropolymers until 2011. *Id*. The Daikin plant has never manufactured or used PFOS, *id*., although PFOS is present on the site due to 3M's deposit of sludge there before Daikin's ownership, *See* Ex. 2.

All three defendants have discharged and continue to discharge PFOA and PFOS into the Tennessee River upstream of the drinking water intake and drinking

---

[1] Mr. Sulkin is a water pollution expert retained by Plaintiffs to review available information on PFOA and PFOS pollution discharged from Defendants' facilities.
[2] Mr. Werling is Director of Engineering at Daikin's Decatur, Alabama, plant and has worked for Daikin in Decatur since 1992.

water treatment plant operated by the Authority. The amount of process discharges of PFOA and PFOS has been reduced since PFOA and PFOS were eliminated in the processes at all three plants. However, significant discharges of PFOA and PFOS continue as a result of groundwater and stormwater contaminated by 3M's past disposal of contaminated sludge on the plant properties. Among the three defendants, 3M and Dyneon account for the lion's share of the PFOA and PFOS discharged into the Tennessee River. *See* Ex. 2.

Research has linked the chemicals to human diseases such as kidney and testicular cancer, ulcerative colitis, immune system suppression, and diseases of the circulatory system.  In 2009 the U.S. Environmental Protection Agency issued interim health advisories for short-term exposure recommending that people not drink water containing PFOA concentrations greater than 0.4 parts per billion (ppb) or PFOS concentrations exceeding 0.2 ppb.  In May 2016, the EPA issued "Lifetime Health Advisories" recommending people not drink water in which the sum of PFOA and PFOS concentrations exceeds 0.07 ppb. *See* Doc. 58-2, 58-3, 58-4, 58-5.

The Authority is a public corporation which supplies domestic water to approximately 25,000 to 35,000 retail customers in a service area west of Decatur in Morgan and Lawrence Counties, Alabama.  The Authority also sells water on a wholesale basis to some smaller utilities which in turn distribute the water to their own retail customers, including V.A.W. Water Systems, Inc., the Falkville Water

Works, the Trinity Water Works, the Town Creek Water System, and the West Lawrence Water Cooperative (collectively "Utilities").  The Authority draws its raw water from the Tennessee River at a point approximately thirteen miles downstream from the Defendants' plants. *See* Declaration of Don Sims, attached as Ex. 4.[3]

After the EPA issued its lifetime health advisories, testing showed that the combined PFOA and PFOS concentration in the Authority's water supply exceeded the new standard of 0.07 ppb.  Upon receiving this information, the Authority publicly advised its customers not to drink the water until concentrations of the chemicals could be reduced below that level.  A short time later, the Authority began blending its own treated water with treated water piped in from Decatur Utilities in order to decrease PFC concentrations.  However, the blending process led to a number of operational problems, but it did bring the PFOA/PFOS concentration below 0.07 ppb.  Approximately one month after the "do not drink" advisory, the Authority announced to its customers that concentrations were below the EPA's health advisory level and that the water was now safe to drink.  Between the two announcements, however, the Authority's customers were billed for water service as usual.  In addition, some of the Authority's wholesale customers had suspended their water purchases from the Authority.  *See* Ex. 4.

After the EPA's issuance of the lifetime health advisories, the Authority

---

[3] Mr. Sims is the General Manager of the Authority.

initiated the process of designing and installing a granulated activated carbon (GAC) treatment system, which can remove virtually all PFOA and PFOS from water before it is distributed to customers. The cost of the GAC system is approximately $4 million. The Authority is funding the project on an interim basis with the proceeds of a bond issue. *See* Ex. 4. The initial phase of the GAC system is installed and is functioning as anticipated, and all of the Authority's current daily water production is being treated by GAC. The finished water treated by the GAC system contains undetectable levels of PFOA and PFOS. *See* Declaration of Bryan Pate, attached as Ex. 5.[4]

## III.    PROCEDURAL HISTORY

On October 5, 2015, Plaintiffs filed an Individual and Class Action Complaint ("Complaint") against 3M, Dyneon, and Daikin. *See* Doc. 1. They alleged that the drinking water supply of the Authority contains toxic chemicals, including PFOA and PFOS as a result of the discharges of these chemicals from Defendants' manufacturing plants in Decatur, Alabama. For their class claims, the Plaintiffs requested injunctive relief and also sought property damages and other damages. Prior to the filing of the original Complaint, Plaintiffs spent considerable time evaluating the facts and law involved in this case. In addition, Plaintiffs have retained experts in several disciplines in support of their claims or defenses.

---

[4] Mr. Pate is the Engineer of Record for the Authority.

Defendants filed motions to dismiss, and Plaintiffs filed an Amended Individual and Class Action Complaint ("Amended Complaint") on February 8, 2016. *See* Doc. 39. Defendants filed motions to dismiss the Amended Complaint, and Plaintiffs responded.

On May 23, 2016, Plaintiffs filed a Motion for Leave to File Supplemental Complaint based on the new Drinking Water Public Health Advisories for lifetime exposure to PFOA and PFOS issued by the EPA on May 19, 2016. *See* Doc. 58.

Plaintiffs and Daikin reached agreement on their settlement, memorialized in a Memorandum of Understanding, on August 31, 2016. The next day Daikin withdrew its motion to dismiss the Amended Complaint. *See* Doc. 61.

On September 7, 2016, Plaintiff Class Members moved to have undersigned counsel appointed as interim class counsel pursuant to Rule 23(g)(3). *See* Doc. 62. The Court granted that motion on September 13, 2016. *See* Doc. 63. On September 20, 2016, this Court issued its Memorandum Opinion and Order on the motion to dismiss of defendants 3M and Dyneon, granting it in part and denying it in part. *See* Doc. 65. The motion sought to dismiss all of Plaintiffs' claims for injunctive relief and damages based on negligence (Count I), nuisance (Count II), abatement of nuisance (Count III), trespass (Count IV), battery (Count V), and wantonness (Count VI). The Court dismissed Plaintiffs' trespass claims, claims for private nuisance (as compared to public nuisance) and negligence claims to the extent based on personal

injuries, but denied the motion on all other claims. The Court also reserved ruling on the sufficiency of the class allegations until a later date. The Court granted Plaintiffs' Motion to Supplement the Complaint, and a Consolidated Complaint was filed on September 27, 2016. *See* Doc. 66. On October 14, 2016, Daikin filed its Answer to the Consolidated Complaint, denying the material allegations and raising numerous defenses. *See* Doc. 67.

Formal discovery has not commenced in the case, but Plaintiffs and their experts have reviewed a significant number of documents, which are available to the public through EPA and the Alabama Department of Environmental Management, concerning the releases of chemicals by Defendants and their levels in the soils, surface water, and groundwater surrounding Defendants' chemical plants. Plaintiffs have also received information from Daikin concerning its manufacturing processes and the source and magnitude of PFOA and PFOS released into the Tennessee River from the Daikin site.

## IV.     THE PROPOSED RELIEF

The proposed Settlement provides substantial benefits to the Class. *See* Exhibit 1. First, it ensures that the Class Members have water that is safe to drink and meets the standard set by EPA for PFOA and PFOS. Daikin will pay for the construction of the Authority's GAC system, which removes PFOA and PFOS from the drinking water supply to a level well below the EPA Drinking Water Health Advisory level.

The cost of this system is $4.0 million, and the Authority has already constructed and begun operating the GAC System. *See* Ex. 4. This will be a temporary solution until The Authority is able to install a permanent reverse osmosis system, which will have the advantage over the GAC system of not requiring the frequent disposal of contaminated activated charcoal and will remove additional pollutants in water drawn from the Tennessee River. *See* Ex. 4.

The provision of the GAC system by Daikin will also provide substantial monetary savings to the Class.  If Daikin had not agreed to provide the GAC System, the Authority would have to finance the System over a twenty-year period and pass the cost of both the principal and interest on to customers in the form of increased rates. The resulting water rate increase would have cost the Class an additional $2 million in bond interest over the next 20 years. *See* Ex. 4.  Therefore, in addition to receiving safe water, the Class will receive a total of $6.0 million in monetary benefits as a result of the provision of the GAC System by Daikin. *See* Ex. 4.

In addition, the Settlement will provide restitution of $450,000 to those members of the Class who are direct residential customers of the Authority and to those utilities that have continuously purchased water from WMEL in 2016 (namely, the Trinity Water Works, the Town Creek Water System, and the West Lawrence Water Cooperative). *See* Ex. 1. This restitution is to reimburse those Class Members who are direct customers of the Authority for the billing for June 2016 during the

period when the Authority advised them not to use their water before the temporary blending with Decatur Utilities water lowered the concentrations of PFOA and PFOS below the EPA Advisory Level. It will also reimburse the water utilities who continued to pay the Authority for water during this time period and allow the Authority to waive minimum monthly charges for those water utilities who discontinued purchasing water from the Authority, which will benefit these Utilities' customers, who are also Class Members. *See* Ex. 4.

Finally, the Settlement will reimburse litigation costs, pay for the costs of providing notice to the Class, and award attorney fees as approved by the Court. The maximum amount to be paid for these three items is $550,000. The total payment by Daikin, including the $4.0 million for the GAC System, the $450,000 for the credit for utility bills, and up to $550,000 for expenses and fees, is not to exceed $5 million. *See* Ex. 1.

In exchange for this relief the Authority and the Class will enter a *pro tanto* settlement with Daikin while retaining all other legal claims against the remaining Defendants in the action.  The settlement will release Daikin for any and all class claims and injuries included in the pending class action, including battery, but excluding claims for manifest personal injury, which are not included in the pending class action and are not intended to be part of this Settlement.[5] The release also

---

[5] As noted above, the Court's Memorandum and Order of September 20, 2016, dismissed

excludes claims for property damage arising from the entry of PFCs on to property through mechanisms other than the delivery of domestic water from the Authority; such claims are also not a part of this case.

## V.   PRELIMINARY   APPROVAL   OF   THE   SETTLEMENT   IS WARRANTED.

### A.   <u>Standards for Preliminary Approval of a Class Settlement.</u>

When exercising its discretion, pursuant to Rule 23(e), to approve a class settlement, the court should consider the public and judicial policies that strongly favor the settlement of class action lawsuits. *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir.1992); *accord Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). "[I]t has been repeatedly recognized that settlements are 'highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits.'" *Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982), *aff'd*, 737 F .2d 982 (11th Cir. 1984) (*quoting Miller v. Republic Nat. Life Ins. Co*., 559 F.2d 426, 428 (5th Cir.1977)). Settlements in class action cases are also favored because they "conserve judicial resources by avoiding the expense of a complicated and protracted litigation process ..." *In re Motorsports Merch. Antitrust Litig*., 112 F.Supp.2d 1329, 1333 (N.D. Ga. 2000). While the proposed Settlement is a partial settlement, it still will conserve judicial resources

---

Plaintiffs' claims for personal injuries as part of their negligence claim for lack of ripeness, because the injuries complained of in the complaint were not "manifest personal injuries."

by reducing the number of defendants and reducing the complexity of the litigation going forward.

The Eleventh Circuit has instructed that, in examining the fairness, adequacy, and reasonableness of a settlement, a district court should examine several factors, including: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *In re CP Ships Ltd. Securities Litigation,* 578 F.3d 1306, 1317–18 (11th Cir.2009) (*quoting Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984)). "Thus, the issues that bear upon whether or not to grant preliminary and final approval here are: a) whether the settlement was procured by collusion among the parties or was the result of arms-length and informed bargaining; and b) whether the proposed settlement is fair, adequate and reasonable, applying the six *Bennett* factors." *Lipuma v. American Express Co.,* 406 F.Supp.2d 1298, 1315 (S.D. Fla. 2005). The Plaintiffs will address each of these issues in turn.

## B.   Application of the *Bennett* Factors

## 1.   The Likelihood of Success at Trial.

"The likelihood of success on the merits is weighed against the amount and

form of relief contained in the settlement." *Lipuma v. American Express Co.,* 406 F.Supp.2d 1298, 1319 (S.D. Fla. 2005). In evaluating this factor, the court should not reach any ultimate conclusions with respect to issues of fact or law involved in the case. "The very uncertainty of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise ... [Settlements] could hardly be achieved if the test on hearing for approval means establishing success or failure to a certainty." *Knight v. Alabama,* 469 F.Supp. 2d 1016, 1033 (N.D. Ala. 2006) (quoting *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 212 (5th Cir.1981)).

Risks are inherent in all litigation, particularly high stakes lawsuits like this one. The Court has weighed in on the sufficiency of the allegations of Plaintiffs' Amended Complaint and has upheld most and dismissed some, but obviously has not considered any evidence or expert testimony at this stage. Daikin, in both its withdrawn motion to dismiss and its Answer, has raised several substantial defenses concerning the merits of Plaintiffs' claims and, absent a settlement, would likely continue to press those issues at the summary judgment stage and beyond. There would be a risk the Court could render judgment for Daikin on these substantive issues.

Moreover, evaluating dispositive motions and trying this case would not only involve uncertain outcomes at each one of those steps, but also would require a

lengthy time commitment from the Court and the Plaintiffs.  And, to say the least, a hearing or trial would not only be lengthy, but logistically complicated and tremendously expensive. For those reasons, the risks faced by the Plaintiffs weigh in favor of accepting the proposed Settlement.

**2.      The Range of Possible Recovery and the Point on or Below the Range of Possible Recovery at Which a Settlement is Fair, Adequate and Reasonable.**

District courts often consider the next two factors together because they are related. *See, e.g., Knight,* 469 F. Supp. 2d at 1033; *Lipuma,* 406 F.Supp. 2d at 1322; *Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 541 (S.D. Fla. 1988). Analysis of these factors requires the court to compare the settlement terms "with the likely rewards the class would have received following a successful trial of the case." *Knight,* 469 F.Supp.2d at 1034. "When making this comparison, the Court should keep in mind that 'compromise is the essence of a settlement, and should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" *Id*.  Here, as in most class actions, it is not only monetary relief that is difficult to quantify, but the range of possible recovery "'spans from a finding of non-liability through varying levels of injunctive relief.'" *Assoc. for Disabled Americans, Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 468 (S.D. Fla. 2002).

There is no doubt that the Settlement provides real, valuable and immediate benefits to the Class Members that are an adequate, fair, and reasonable compromise of their claims for injunctive relief against Daikin, and which are sufficiently related to the injunctive relief sought through the Class Claims, pursuant to Civil Rule 23(b)(2).  Although a victory at trial might result in some additional or alternative relief against Daikin for Class Members, the proposed Settlement provides guaranteed benefits much sooner.  The Settlement is fair to Class Members, even though it does not provide all of the benefits that the Class Representatives initially sought.  "Any settlement typically offers far less than a full recovery. Indeed, settlements, by their nature, do not yield one hundred percent recovery for plaintiffs." *Faught v. Am. Home Shield Corp.*, No. 2:07-CV-1928-RDP, 2010 WL 10959223, *14 (N.D. Ala. Apr. 27, 2010), *aff'd,* 668 F.3d 1233 (11th Cir. 2011). This is especially true in light of the Court's dismissal of the Class Members' claims for personal injuries, which has reduced the amount of potential damages recoverable in this suit.  It is also important to note that the Settlement does not affect Class Members' claims against 3M and Dyneon, which, as noted below, are the primary sources of the PFOA and PFOS in the Tennessee River.  *See* Ex. 2.

The timing of the Class benefits in the proposed Settlement weighs heavily in its favor. Class members have received immediate guaranteed safe water, while avoiding significant immediate rate increases which would have lasted for twenty

years.  It is uncertain that the Plaintiffs would achieve this relief from Daikin even after years of continued litigation.

Finally, Plaintiffs have evaluated the relative contribution of Daikin versus the other two Defendants to the contamination in their water supply as part of their evaluation of the fairness of the amount of the proposed Settlement. Based upon the review by an expert water quality consultant of data provided by Daikin, as well as publicly available data, Plaintiffs believe that Daikin's contribution to the contamination of the Tennessee River with PFOA has been relatively minor, and that Daikin did not contribute at all to the contamination by PFOS. *See* Ex. 2. Daikin's recent releases of PFOA and PFOS appear to be from stormwater contaminated by past sludge disposal by 3M on the property that Daikin purchased from 3M in 1991. *See* Ex. 2.

**3.     The Complexity, Expense and Duration of Litigation.**

This inquiry overlaps in some respects with the first *Bennett* factor—likelihood of success on the merits. In assessing this factor, "[t]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *Lipuma,* 406 F.Supp.2d at 1323 (quoting *In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D.

La.1993)). "Complex litigation ... can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Lipuma,* 406 F.Supp.2d at 1323–24; *Woodward v. NOR-AM Chemical Co.*, No. Civ. 94–078019, 96 WL 1063670, *21 (S.D. Ala. May 23, 1996).

Again, the need for the immediate relief in the form of a safe water supply for the Class as compared to the potential of perhaps years of litigation to possibly achieve the same solution weighs in favor of preliminary approval of the Settlement.

**4.      The Substance and Amount of Opposition to the Settlement**

This factor does not apply at the preliminary approval stage. It becomes relevant after the class members receive notice of the Settlement and have an opportunity to object.

**5**.      **The Stage of Proceedings at Which the Settlement Was Achieved.**

Although this case is still in a relatively early stage, prior to the commencement of discovery, Plaintiffs have had the opportunity prior to and during the pendency of this matter for nearly a year to thoroughly evaluate the likelihood whether their claims will succeed on the merits. Defendants' environmental discharges are the subject of voluminous public filings with regulatory agencies, so formal discovery is not necessary to obtain that crucial information.  Formal discovery is not essential to judicial approval where class counsel otherwise have

sufficient information to evaluate the proposed settlement. *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir.1981), *cert. denied*, 456 U.S. 998 (1982). Plaintiffs are represented by experienced counsel who understand the time and expense that continued litigation, trial and possible appeal would require in this complex case.  Given that they have had the opportunity to evaluate these issues with experienced counsel, this factor weighs in favor of approving the settlement.

## VI.     THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASS.

The Court should conditionally certify the Settlement Class and set a schedule for notice to the class and for a fairness hearing for final approval. The proposed class meets the requirements for class certification under Fed. R. Civ. P. 23.

Where, as in this case, a class action is settled prior to certification, the appropriate procedure is for the Court to conditionally certify a "temporary settlement class" for the purpose of providing notice to putative members of a proposed class of the terms of the anticipated settlement and of their opportunity to object. *In re Beef Industry Antitrust Litigation*, 607 F.2d 167, 173–78 (5th Cir. 1979), *cert. denied*, 452 U.S. 905 (1981). The U.S. Supreme Court has emphasized that the district court may not disregard the requirements of Fed. R. Civ. P. 23(a) and (b) in certifying a settlement class. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620-622 (1997).

**A.**    **The Settlement Class Definition.**

The Settlement Class definition proposed by the Parties is a slight modification of the definition in Plaintiffs' Consolidated Individual and Class Action Complaint:

> all owners and possessors of property as of the time of certification of the Settlement Class who use water provided by the West Morgan-East Lawrence Water and Sewer Authority, the V.A.W. Water System, the Falkville Water Works, the Trinity Water Works, the Town Creek Water System, and the West Lawrence Water Cooperative.

The modification makes it clear that, for purposes of this Settlement, the definition would apply to those class members who are water users at the time of conditional class certification for the Settlement Class. *See* Ex. 1.

**B.**    **Rule 23(a) Requirements Are Satisfied.**

Under Fed. R. Civ. P. 23(a), a class may be certified if "(1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly." *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1187–88 (11th Cir. 2003). These four prerequisites are generally known as "numerosity, commonality, typicality, and adequacy of representation." *Id.* at 1188. While the prerequisites are often discussed in isolation, the inquiries necessary to determine whether they are

met tend to overlap. *See Amchem Prods.,* 521 U.S. at 626 n. 20 ("The adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.")

Each of the Rule 23(a) requirements is satisfied in the instant case. The numerosity element requires that the members of the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, there can be little doubt about numerosity of the class. As the Declaration of Don Sims states, there are 25,000 to 35,000 individual customers served by the Authority directly. In addition, The Authority provides water on a wholesale basis to the other utilities named in the Class Definition with approximately 12,700 accounts, equating to 32,000 to 44,000 individual customers. The total of at least 57,000 Class Members is sufficiently numerous to meet the requirements of Rule 23(a). *See Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986).

"Commonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Williams v. Mohawk Indus.,* 568 F.3d 1350, 1355 (11th Cir.2009) (quoting *Stewart v. Winter,* 669 F.2d 328, 335 (5th Cir.1982)). There are several common issues here, including

(a) the factual history of the use, development, and distribution of PFOA, PFOS, and related chemicals manufactured and used by the Defendants at their Decatur, Alabama, facilities; (b) when the Defendants knew of the harmful effects of PFOA, PFOS, and related chemicals; (c) whether the Defendants failed to disclose the harmful effects of PFOA, PFOS, and related chemicals being released from their plants in Decatur, Alabama; (d) the extent of the contamination at the Defendants' plant sites in Decatur, Alabama, and the migration of that contamination into the Tennessee River; (e) whether the water supplied to Representative Plaintiffs and Class Members has been and continues to be contaminated with PFOA, PFOS, and related chemicals; (f) whether the Defendants' conduct constitutes a continuing nuisance; (h) the necessary remedial actions to prevent Defendants' chemicals from continuing to enter Representative Plaintiffs' and Class Members' water supplies; and (i) the appropriateness of injunctive relief to prevent Defendants' chemicals from continuing to enter Representative Plaintiffs' and Class Members' water supplies. See Consolidated Complaint.  These common questions of fact and law are sufficient to meet the "low hurdle of Rule 23(a)(2)." *Williams,* 568 F.3d at 1356.

Typicality is satisfied if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* at 1357 (*quoting Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984)). "A class representative must possess the same

interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Id.* (quoting *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir.2001)). Here, the Representative Plaintiffs' claims and the claims of the Class Members arise from the same alleged drinking water contamination, and all of the claims are based on the same legal theories.

"The adequacy-of-representation requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1189 (11th Cir. 2003)). There are no conflicts of interest between the Class Representatives and Class Members, and the Class Representatives have continued to vigorously prosecute this action. Moreover, Plaintiffs' attorneys have demonstrated extensive experience as litigators in federal court class action litigation and have been appointed by the Court as Interim Class Counsel. *See* Doc. 63.

## C.   <u>Rule 23(b) Requirements Have Been Satisfied</u>.

The proposed class must also meet the requirements of at least one of the three class types found in Fed. R. Civ. P. 23(b). Here, Plaintiffs move for the certification of a Rule 23(b)(2) settlement class for injunctive relief.[6]

---

[6] Certification under Rule 23(b)(3) would also be appropriate.  But when certification is proper

Rule 23(b)(2) provides that a class action is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class," and the representatives are seeking "final injunctive relief or corresponding declaratory relief." Fed. R. Civ. P. 23(b)(2). Certification of a class under Rule 23(b)(2) is appropriate where the remedy sought is "an indivisible injunction" that applies to all class members "at once." *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 360 (2011).

There are two basic factors that must be present in order for an action to fall within Rule 23(b)(2): (1) the opposing party's conduct or refusal to act must be "generally applicable" to the class and (2) final injunctive or corresponding declaratory relief must be requested for the class. For "generally applicable," the key is whether the party's actions affected all persons similarly situated so that those acts apply generally to the whole class. The second prerequisite to bringing an action under Rule 23(b)(2) is that final injunctive or declaratory relief must be requested against the party opposing the class. Injunctive relief embraces all forms of judicial orders, whether mandatory or prohibitory. 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1775 (3rd ed. 2016).

---

under both of subsections (b)(2) and (b)(3), a court should certify the class under (b)(2) because of the broader *res judicata* effect of a judgment in a mandatory class. *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 447 (5th Cir. 1973); *Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705, 712 (D. Ariz. 1993).  If the Court does not believe Rule 23(b)(2) certification is appropriate, Plaintiffs request the opportunity to brief separately the issue of certification under Rule 23(b)(3).

In the instant case, Plaintiffs have alleged that the chemicals released by Daikin into the Tennessee River have contaminated the Authority's water supply, which affects all users of water supplied by the Authority, including the users of water from the utilities that are wholesale customers of the Authority. This water is distributed by the Authority and its wholesale purchasers to all Class Members. Therefore, all of the Class Members have been affected in the same way by Daikin's releases of chemicals.

The primary injunctive relief in the proposed Settlement is the creation of a fund to pay for a GAC System installed by the Authority to treat all of its water to remove PFOA and PFOS to concentrations below the EPA Drinking Water Health Advisory level.[7] This injunctive relief provides benefits to all Class Members of safe drinkable water. As discussed, it also provides substantial benefits in reducing the future water bills of all class members by reducing the Authority's borrowing costs for the money it would otherwise have had to borrow to install the GAC System, which would have been passed on to the Class Members.  Significantly, these are benefits that <u>necessarily</u> accrue to the Class Members by virtue of their being customers of the Authority.  Even if they were to opt out of a litigation-defined class, they would still receive the benefits because of the inherent nature of the relationship

---

[7] This relief was requested in Paragraph 94 of the Consolidated Complaint, which states: "The Court should issue an injunction requiring Defendants to remove their chemicals and toxins from the water supplies of Plaintiffs and to prevent these chemicals and toxins from continuing to contaminate Plaintiffs' water supplies …" *See* Doc. 66.

between the Authority and its customers.  A Class Member cannot refuse to accept clean water delivered by the Authority.  Nor can a Class Member refuse the benefit of avoiding future rate increases that would be necessary but for the settlement.

In another case involving PFOA contamination of drinking water, a federal court in New Jersey certified an injunctive relief settlement class where the defendant created an $8.3 million fund to provide home water filters to members of the class of water users.  *See Rowe v. E.I. DuPont de Nemours and Co*., 2011 WL 3837106, Nos. 06–1810, 06–3080 (D. N.J. Aug. 26, 2011). There, the court certified the settlement class under Rule 23(b)(2), despite the fact that the defendant was creating a fund of money to pay for the filters. See also, *Williams v. Nat. Sec. Ins. Co*., 237 F.R.D. 685, 694 (M.D. Ala. 2006), in which the court certified a settlement class under 23(b)(2) in a civil rights case alleging discrimination in issuing insurance policies. The relief included a refund of overpayments to make the class whole.

In addition to the injunctive relief provided by the present Settlement, there is restitution to be provided to class members of $450,000 for water bill payments for the month of June 2016 during the time when the Authority had advised them not to use their water for drinking and cooking purposes as a result of the EPA Drinking Water Health Advisories. This credit or refund is incidental to the injunctive relief and may be awarded as part of a 23(b)(2) class settlement.

While class certification based on claims for individualized monetary relief is impermissible under Rule 23(b)(2), the Supreme Court has left open the question whether incidental monetary relief may be sought on a class-wide basis pursuant to Rule 23(b)(2). *Dukes*, 564 U.S. at 366. The Eleventh Circuit has not addressed this question yet post-*Dukes*, but other circuits have concluded that such relief may be appropriate where it "flow[s] directly from liability to the class as a whole" from "claims forming the basis of ... injunctive or declaratory relief." *Amara v. CIGNA Corp.*, 775 F.3d 510, 519-20 (2nd Cir. 2014) (*Dukes* "does not foreclose an award of monetary relief when that relief is incidental to a final injunctive or declaratory remedy"). S*ee also Johnson v. Meriter Health Servs. Emp. Ret. Plan,* 702 F.3d 364, 371 (7th Cir.2012) (concluding that incidental monetary relief may be awarded in a Rule 23(b)(2) class action pursuant to a pension plan's reformation); and *Berry v. Schulman*, 807 F.3d 600, 609-10 (4th Cir. 2015) (Rule 23(b)(2) class settlement upheld where settlement dealt with significant injunctive relief and statutory damages – what matters is that defendant's conduct "was uniform with respect to each of the class members").

In the instant case, Daikin's alleged conduct in polluting the water supply was uniform with respect to each member of the class. The uniform injunctive relief is the requirement that Daikin provide a safe water supply to the entire class by funding installation of the GAC System. The restitution to class members flows directly from

the alleged liability to the class as a whole, because the need for restitution resulted from charges during the time when members of the class were unable to use their water due to the contamination.

Because the class is potentially certifiable under the requirements of Rule 23, this Court should conditionally approve the class for purposes of notice of the class settlement and schedule a fairness hearing for final approval.

## VII.   THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE TO CLASS MEMBERS.

"[R]ule 23(e) requires that absent class members be informed when the lawsuit is in the process of being voluntarily dismissed or compromised." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1317 (11th Cir. 2012). The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–812 (1985). It is well established that a district court has great discretion in determining the kind of notice to employ in alerting class members to a proposed settlement and settlement hearing, subject to "the broad reasonableness standards imposed by due process." *Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1059 (5th Cir.1979); *Battle v. Liberty National Life Insurance Company*, 770 F. Supp. 1499, 1521 (N.D. Ala. 1991).

For 23(b)(2) classes, the Court does not have to order individual notice. Fed.

R. Civ. P. 23(c)(2)(A). *Battle*, 770 F. Supp. at 1517. Nevertheless, Plaintiffs in this case have opted for individual notice and have supplied to the Court for review a Notice Plan, including a copy of the Notice that Class Counsel propose to send to Class Members, attached as Exhibit 6. Furthermore, for 23(b)(2) classes, the Court does not have to provide the opportunity for Class Members to opt out.[8]

The proposed Notice attached to this Memorandum as part of the Notice Plan, Ex. 6, contains sufficient information to satisfy the requirements of Fed. R. Civ. P. 23(e)(3). The Proposed Notice incorporates the "plain language" guidelines and incorporates elements of the illustrative notice forms that the Federal Judicial Center developed for use in federal courts. The notice contains clear and concise information about the settlement, including: (a) the fact of the settlement of the claims; (b) a definition of the class; (c) a summary of the settlement benefits; (d) a brief description of the case; (e) a statement concerning how attorneys' fees will be paid; (g) the options available to the class members, including their right to obtain

---

[8] The Plaintiffs have cited *Rowe v. E.I. DuPont de Nemours and Co.* as an example of a Rule 23(b)(2) settlement in a case similar to this one where a fund was provided for water filters for individual class members. In *Rowe*, the settling parties agreed among themselves to give absent class members the right to opt out of the class (and the settlement benefits), which is unorthodox but permissible for a Rule 23(b)(2) class. *See Rowe*, 2011 WL 3837106 at *2 n.10. Providing an opt-out right perhaps made sense in *Rowe*, where the class members were allowed to take the settlement benefit in the form of either a water filter or an unrestricted cash payment equivalent to the cost of the filter. *Id.* at *2. That arrangement made the settlement very close, as a practical matter, to one involving straight monetary damages. Damages cases are normally certifiable only under Rule 23(b)(3), which requires that class members be given the right to opt out. In the present case, an opt-out right is not appropriate because, as explained above, Class Members cannot avoid receiving the benefits of the settlement.

independent counsel at their expense; (h) the deadlines by which the class members needed to object, (i) and the date, time, and location for the fairness hearing.

In sum, the proposed Class Notice offers adequate overview of the Settlement, provides necessary detail, and reasonably advises the Class Members where they can obtain additional   information.   The notice is  simple, easy to understand, and accurately summarizes the key elements  of the Settlement. The Court  should approve the Class Notice and direct that notice be mailed in accordance with the terms of the Settlement.

## VIII. ATTORNEY FEES AND EXPENSES

If the Court preliminarily approves the Settlement, Class Counsel will file a petition, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, seeking an award of  reasonable  attorneys' fees and expenses incurred in connection with representation of the Class Members in the Actions.  Class Counsel will support the Petition with a detailed explanation of the reasonableness of the fees and expenses sought in the context of this litigation, which will be available for all Class Members and the Court to review and respond to sufficiently in advance of the final Fairness Hearing.

## IX. PROPOSED SCHEDULE AND ACTION ITEMS

| TASK | DATE or DEADLINE | DESCRIPTION |
|---|---|---|
| Notice to Class Members | Beginning approximately 7 days after the date of entry of the Preliminary Approval | The proposed Notice Plan and Notice are attached to this Memorandum and |

|  | Order and completed with supplemental notices and skip-trace mailings 45 days after the Preliminary Approval Order. | referenced in the proposed Preliminary Approval Order. |
| --- | --- | --- |
| Objection Deadline | Objections must be postmarked no later than 30 days before the Fairness Hearing. The exact calendar date is to be specified in the Preliminary Approval Order. | Procedures applicable to the filing of are set out in the proposed Preliminary Approval Order. |
| Filing of a motion for final approval of the settlement and the filing of Class Counsel's Petition for Attorneys' Fees and Expenses. | Within 21 days before the Fairness Hearing to be set by the Court. | The motion for final approval will set forth the reasons for final approval of the Agreement and will respond to any timely-received objections to the Agreement. The Parties have agreed that Class Counsel shall seek any award of attorneys' fees, costs, or expenses from the Settlement Amount. The Court must approve the payment of fees and expenses based on Class Counsel's Petition for Attorneys' Fees and Expenses. |
| Fairness Hearing | Available dates on the Court calendar beginning no earlier than February 6, 2017. | The Parties request that the Court designate this date as part of its Preliminary Approval Order, because it is necessary for notice to the Class. |

# X.    CONCLUSION

Plaintiffs respectfully request that the Court preliminarily approve the Settlement and find, based on the Court's initial review, that the proposed Settlement is fair and reasonable and worthy of submission to the Class Members. Plaintiffs also request the Court to conditionally certify the proposed class for purposes of notice and the fairness hearing  Plaintiffs also ask the Court to find that the  proposed Class Notice satisfies due process and Rule 23 of the Federal Rules of Civil Procedure and to direct that Class Counsel mail the Class Notice to the Class Members.  Finally, Plaintiffs ask the Court to set dates for the final Fairness Hearing and for the deadline for Class Members  to file any objections to the Settlement.

A proposed Order preliminarily approving the Settlement is attached as Exhibit 7.

Respectfully submitted.

/s/ Gary A. Davis
Gary A. Davis, NC Bar No. 25976
(Pro Hac Vice)
James S. Whitlock, NC Bar No. 34304
(Pro Hac Vice)
Douglas A. Ruley, NC Bar No. 14425
(Admission Requested Pro Hac Vice)
DAVIS & WHITLOCK, P.C.
21 Battery Park Ave., Suite 206
Asheville, NC 28801
T: (828) 622-0044
F: (828) 398-0435
gadavis@enviroattorney.com
jwhitlock@enviroattorney.com

druley@enviroattorney.com

Jeff Friedman (ASB-6868-N77J)
Lee T. Patterson (ASB-5482-E47P)
FRIEDMAN, DAZZIO, ZULANAS &
BOWLING, PC
3800 Corporate Woods Drive
Birmingham, Alabama 35242
T: 205-278-7000
F: 205-278-7001
jfriedman@friedman-lawyers.com
lpatterson@friedman-lawyers.com


Carl Allen Cole, III (ASB-1309-R75C)
The Cole Law Firm, LLC
P.O. Box 2064
Decatur, Alabama 35602-2064
T: 256-353-0550
F: 256-353-0552
carl@carlco

ATTORNEYS FOR THE WEST
MORGAN-EAST LAWRENCE WATER
AND SEWER AUTHORITY AND
INTERIM CLASS COUNSEL


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 17, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

Mr. Steven F. Casey
JONES WALKER LLP
1819 5th Ave North, Suite 1100
Birmingham, AL 35203
scasey@joneswalker.com

Mr. Christopher Yeilding
BALCH & BINGHAM, LLP
P.O. Box 306
Birmingham, AL 35201-0306
cyeilding@balch.com

Mr. Robert J. Shaughnessy
WILLIAMS & CONNOLLY LLP
725 12th Street NW
Washington, DC 20005-5901
bshaughnessy@wc.com

Mr. M. Christian King
Mr. Harlan I. Prater, IV
Mr. William S. Cox, III
Mr. William H. Brooks
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200
cking@lfwlaw.com
hprater@lfwlaw.com
wcox@lfwlaw.com
mbrooks@lfwlaw.com

Mr. William A. Brewer, III
Mr. Michael J. Collins
Ms. Stephanie L. Gase
BREWER ATTORNEYS & COUNSELORS
1717 Main Street, Suite 5900
Dallas, Texas 75201
wab@brewerattorneys.com
mjc@brewerattorneys.com
szg@brewerattorneys.com

/s/ *Gary A. Davis*
Attorney