**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

WEST MORGAN-EAST )
LAWRENCE WATER AND )
SEWER AUTHORITY, and )
TOMMY LINDSEY, LANETTE )
LINDSEY and LARRY )
WATKINS, individually, and on )
behalf of a Class of persons )
similarly situated, )
                                )
     Plaintiffs, )
                                )
vs. )     Case  No. 5:15-cv-01750-AKK
                                )         **CLASS ACTION**
3M COMPANY, DYNEON, )         **JURY DEMAND**
L.L.C., and DAIKIN AMERICA, )
INC., )
                                )
     Defendants. )

**PLAINTIFFS' MEMORANDUM IN SUPPORT**
**OF JOINT MOTION FOR FINAL APPROVAL**
**OF *PRO TANTO* CLASS ACTION**
**SETTLEMENT**

**TABLE OF CONTENTS**

I.     INTRODUCTION ………………………………….................. 3

II.    FACTUAL BACKGROUND……………………………............ 5

III.   PROCEDURAL HISTORY…………………………………….. 9

IV.   THE PROPOSED RELIEF……………………………………… 12

**V. FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED**……………………………………............ 14

    **A. Standards for Final Approval of a Class**………….................. 14
       **Settlement.**

    **B. The Settlement was the Result of Arm's-Length and Informed Bargaining** ………….................................................. 16

    **C. Application of the Bennett Factors**……………………….. 17

       **1. The Likelihood of Success at Trial**…………………………... 17

       **2. The Range of Possible Recovery and the Point on or Below the Range of Possible Recovery at Which a Settlement is Fair, Adequate and Reasonable**……………….. 19

       **3. The Complexity, Expense and Duration of Litigation**............. 21

       **4. The Substance and Amount of Opposition to the Settlement**……………………………………………................ 22

       **5. The Stage of Proceedings at Which the Settlement Was Achieved**…………………………………………………… 23

**VI. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS**…………………………………………………………… 23

    **A. The Settlement Class Definition**………………………………. 24

    **B. Rule 23(a) Requirements Are Satisfied**…………………………. 24

    **C. Rule 23(b) Requirements Have Been Satisfied**…………………. 28

**VII. THE NOTICE TO CLASS MEMBERS SATISFIED RULE 23(e)** ..................………….….…………………………….. 32

**VIII. ATTORNEY FEES AND EXPENSES**……………………………. 34

**IX. CONCLUSION**………………………………....……….. 35

# I.    INTRODUCTION

Plaintiffs West Morgan-East Lawrence Water and Sewer Authority (the "Authority") and Class Representatives Tommy Lindsey, Lanette Lindsey, and Larry Watkins, on behalf of themselves and a Class consisting of all owners or possessors of real property who use water from the Authority seek final approval under Federal Rule of Civil Procedure 23(e) of the proposed *Pro Tanto* Individual and Class Settlement Agreement ("Settlement") of the class claims against defendant Daikin America, Inc. ("Daikin"). The Court preliminarily approved the Settlement and conditionally certified the Settlement Class after hearing on February 21, 2017. (*See* Preliminary Approval Order, Doc. 79).

The Settlement requires Daikin to fund the installation of a granular activated carbon treatment system at the Authority's water treatment facility, which ensures Class Members' water supply is substantially free of toxic perfluorinated chemicals ("PFCs").  As an ancillary matter, the Settlement will also provide Class Members with restitution of certain monies paid to the Authority.  In exchange for the Class Benefits, the Class Members and the Authority will resolve their claims against Daikin contained in the Consolidated Individual and Class Complaint and will release Daikin only for those individual and class claims in  accordance with the terms of the Settlement attached to this motion as Exhibit 1. The Settlement will preserve Class Members' right to assert claims against Daikin for personal injuries

and for property damages unrelated to Authority-provided water. In addition, the Settlement will preserve all of Class Members' claims against the remaining defendants, 3M Company ("3M") and Dyneon, LLC ("Dyneon").

As preliminarily determined by the Court following the preliminary fairness hearing, and for the reasons set out below, the proposed Settlement is the product of an informed, arm's-length negotiation by counsel and is fair, just, reasonable, valid and adequate and is due to be approved by the Court. (*See* Preliminary Approval Order Doc. 79 at ¶ 5(a)). The Court applied the Eleventh Circuit's *Bennett* factors in considering preliminary approval of the Class Settlement: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.1984). The fifth factor was reserved for discussion in this Motion for Final Approval and for the Fairness Hearing.

As to the substance and amount of opposition to the Settlement, both can be described as minor. The Class Representatives fully support Court approval of the Settlement. (*See* Declarations of Class Representatives Tommy Lindsey, Lanette Lindsey, and Larry Watkins, attached as Exs. 2-4). As described below, since the

Court preliminarily approved the Settlement, the Court-approved Class Notice has been sent to the Class Members in compliance with the approved Notice Plan, disclosing the terms of the Settlement. (See Declarations of Jeffrey E. Friedman and Lee Patterson, attached as Exhibits 5 and 6). Of over 17,000 Class Members' households receiving the Notice, there have been only two written objections filed with the Court, one on behalf of approximately 300 plaintiffs in an almost identical lawsuit against 3M, Dyneon, and Daikin filed in state court in early 2017 and removed to this Court (see *Owens* Objection, Doc. 83), and one on behalf of two individuals.[1] Even assuming that all of the plaintiffs in the *Owens* case are Class Members in this case, these written objections constitute less than 1.5% of the households and a smaller percentage of the individual Members of the Settlement Class.

## II. FACTUAL BACKGROUND

PFCs and related chemicals are a class of fluorine-based organic chemicals, two of which are the main focus of this case. Perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate (PFOS) were used for decades in a variety of consumer products to make them more resistant to stains, grease, and water. PFOA was also

---

[1] As described in the Declarations of Jeff Friedman and Lee Patterson and discussed below, Class Counsel received telephone calls and written communications in response to the Notice which were not lodged with the Court. Most of these involved questions about the Settlement and whether the Class Member was required to appear in Court, although some expressed concerns about the amount of compensation to Class Members.

used as a process aid in the manufacture of fluoropolymers.

Defendant 3M was the primary U.S. manufacturer of PFOA and PFOS. The 3M plant in Decatur began operating in 1961, and the related Dyneon plant began operating in 1996, eventually becoming a wholly owned subsidiary of 3M. The 3M plant produced millions of pounds of PFOA and PFOS and used these chemicals in its processes to produce other chemicals. Dyneon also used PFOA and PFOS in its processes. 3M and Dyneon phased out production and use of PFOA and PFOS by 2004. (*See* Declaration of Barry W. Sulkin, attached as Exhibit 7;[2] *see also* Declaration of Larry Neal, attached as Exhibit 8[3]).

In 1991, 3M sold some of the undeveloped land at its Decatur facility to Daikin, which opened its own chemical manufacturing plant on the site in 1994. *See* Declaration of Ralph Werling, attached as Exhibit 9.[4] The Daikin plant used PFOA in the production of fluoropolymers until 2011. *Id*. The Daikin plant has never manufactured or used PFOS, *id*., although PFOS is present on the site due to 3M's deposit of sludge thereon before Daikin's ownership. (*See* Exs. 7, 8, 9).

All three defendants have discharged and continue to discharge PFOA and PFOS into the Tennessee River upstream of the drinking water intake and drinking

---

[2] Mr. Sulkin is a water pollution expert retained by Plaintiffs to review available information on PFOA and PFOS pollution discharged from Defendants' facilities.

[3] Mr. Neal is an environmental consultant retained by Daikin to review available information on PFOA and PFOS pollution discharged from Defendants' facilities.

[4] Mr. Werling is Director of Engineering at Daikin's Decatur, Alabama, plant and has worked for Daikin in Decatur since 1992.

water treatment plant operated by the Authority. The amount of process discharges of PFOA and PFOS has been reduced since PFOA and PFOS were eliminated in the processes at all three plants. However, significant discharges of PFOA and PFOS continue as a result of groundwater and stormwater contaminated by 3M's past disposal of contaminated sludge on the plant properties. Among the three defendants, 3M and Dyneon account for the lion's share of the PFOA and PFOS discharged into the Tennessee River. (*See* Ex. 7, 8).

Research has linked the chemicals to human diseases such as kidney and testicular cancer, ulcerative colitis, immune system suppression, and diseases of the circulatory system. In 2009 the U.S. Environmental Protection Agency issued interim health advisories for short-term exposure recommending that people not drink water containing PFOA concentrations greater than 0.4 parts per billion (ppb) or PFOS concentrations exceeding 0.2 ppb. In May 2016, the EPA issued "Lifetime Health Advisories" recommending people not drink water in which the sum of PFOA and PFOS concentrations exceeds 0.07 ppb. (*See* Doc. 58-2, 58-3, 58-4, 58-5).

The Authority is a public corporation which supplies domestic water to approximately 25,000 to 35,000 retail customers in a service area west of Decatur in Morgan and Lawrence Counties, Alabama. The Authority also sells water on a wholesale basis to some smaller utilities which in turn distribute the water to their

own retail customers, including V.A.W. Water Systems, Inc., the Falkville Water Works, the Trinity Water Works, the Town Creek Water System, and the West Lawrence Water Cooperative (collectively "Utilities"). The Authority draws its raw water from the Tennessee River at a point approximately thirteen miles downstream from the Defendants' plants. (*See* Declaration of Don Sims, attached as Ex. 10[5]).

After the EPA issued its lifetime health advisories, testing showed that the combined PFOA and PFOS concentration in the Authority's water supply exceeded the new standard of 0.07 ppb. Upon receiving this information, the Authority publicly advised its customers not to drink the water until concentrations of the chemicals could be reduced below that level. A short time later, the Authority began blending its own treated water with treated water piped in from Decatur Utilities in order to decrease PFC concentrations. Unfortunately, the blending process led to a number of operational problems, but it did bring the PFOA/PFOS concentration below 0.07 ppb. Approximately one month after the "do not drink" advisory, the Authority announced to its customers that concentrations were below the EPA's health advisory level and that the water was now safe to drink. Between the two announcements, however, the Authority's customers were billed for water service as usual. In addition, some of the Authority's wholesale customers had suspended their water purchases from the Authority. (*See* Ex. 10).

---

[5] Mr. Sims is the General Manager of the Authority.

After the EPA's issuance of the lifetime health advisories, the Authority initiated the process of designing and installing a granulated activated carbon ("GAC") treatment system, which can remove virtually all PFOA and PFOS from water before it is distributed to customers. The cost of the GAC system is approximately $4 million. The Authority is funding the project on an interim basis with the proceeds of a bond issue. *See* Ex. 4. The temporary GAC system has been installed and is functioning as anticipated, and all of the Authority's current daily water production is being treated by GAC. The finished water treated by the GAC system contains undetectable levels of PFOA and PFOS. (*See* Declaration of Bryan Pate, attached as Ex. 11[6]).

## III.     PROCEDURAL HISTORY

On October 5, 2015, Plaintiffs filed an Individual and Class Action Complaint ("Complaint") against 3M, Dyneon, and Daikin. (*See* Doc. 1). They alleged that the drinking water supply of the Authority contains toxic chemicals, including PFOA and PFOS, as a result of the discharges of these chemicals from Defendants' manufacturing plants in Decatur, Alabama. For their class claims, the Plaintiffs requested injunctive relief and also sought property damages and other damages. Prior to the filing of the original Complaint, Plaintiffs spent considerable time evaluating the facts and law involved in this case. In addition, Plaintiffs have

---

[6] Mr. Pate is the Engineer of Record for the Authority.

retained experts in several disciplines in support of their claims or defenses. (*See* Declaration of Class Counsel, Gary A. Davis, attached as Ex. 12).

Defendants filed motions to dismiss, and Plaintiffs filed an Amended Individual and Class Action Complaint ("Amended Complaint") on February 8, 2016. (*See* Doc. 39). Defendants filed motions to dismiss the Amended Complaint, and Plaintiffs responded. On May 23, 2016, Plaintiffs filed a Motion for Leave to File Supplemental Complaint based on the new Drinking Water Public Health Advisories for lifetime exposure to PFOA and PFOS issued by the EPA on May 19, 2016. (*See* Doc. 58).

After months of negotiation, Plaintiffs and Daikin reached agreement on their settlement, memorialized in a Memorandum of Understanding, on August 31, 2016. The next day Daikin withdrew its motion to dismiss the Amended Complaint. (*See* Doc. 61).

On September 7, 2016, Plaintiff Class Members moved to have undersigned counsel appointed as interim class counsel pursuant to Rule 23(g)(3). (*See* Doc. 62). The Court granted that motion on September 13, 2016. (*See* Doc. 63). On September 20, 2016, this Court issued its Memorandum Opinion and Order on the motion to dismiss of defendants 3M and Dyneon, granting it in part and denying it in part. (*See* Doc. 65). The motion sought to dismiss all of Plaintiffs' claims for injunctive relief and damages based on negligence (Count I), nuisance (Count II), abatement of

nuisance (Count III), trespass (Count IV), battery (Count V), and wantonness (Count VI). The Court dismissed Plaintiffs' trespass claims, claims for private nuisance (as compared to public nuisance) and negligence claims to the extent such claims were based on personal injuries, but denied the motion on all other claims. The Court also reserved ruling on the sufficiency of the class allegations until a later date. The Court granted Plaintiffs' Motion to Supplement the Complaint, and a Consolidated Complaint was filed on September 27, 2016. (*See* Doc. 66). On October 14, 2016, Daikin filed its Answer to the Consolidated Complaint, denying the material allegations and raising numerous defenses. (*See* Doc. 67).

Formal discovery has commenced in the case, pretrial deadlines have been established, and a trial date of October 19, 2018, has been set, in accordance with the Court's Scheduling Order entered on February 9, 2017. (*See* Doc. 77). In addition to serving formal discovery, Plaintiffs and their experts have reviewed thousands of pages of documents, which are available to the public through EPA and the Alabama Department of Environmental Management, concerning the releases of chemicals by Defendants and their levels in the soils, surface water, and groundwater surrounding Defendants' chemical plants. Plaintiffs have also received information from Daikin concerning its manufacturing processes and the source and magnitude of PFOA and PFOS released into the Tennessee River from the Daikin site. Plaintiffs and their experts have also reviewed a significant number of documents concerning the

liability of Defendants for these releases, including documents concerning the toxicity and persistence of the PFCs released and Defendants' knowledge of this toxicity and persistence over the past 50 years. Nothing that Plaintiffs have learned since the Preliminary Approval Order has changed their assessment of the fairness and adequacy of the Class Settlement. (*See* Ex. 12).

## IV.     THE PROPOSED RELIEF

The proposed Settlement provides substantial benefits to the Class. *See* Exhibit 1.  First, it ensures that the Class Members have water that is safe to drink and meets the standard set by EPA for PFOA and PFOS.  Daikin will pay for the construction of the Authority's GAC system, which removes PFOA and PFOS from the drinking water supply to a level well below the EPA Drinking Water Health Advisory level. The cost of this system is $4.0 million, and the Authority has already constructed and begun operating the GAC System. (*See* Ex. 10). This will be a temporary solution until The Authority is able to install a permanent reverse osmosis system, which will have the advantage over the GAC system of not requiring the frequent disposal of contaminated granular activated charcoal and will remove additional pollutants in water drawn from the Tennessee River. (*See* Ex. 11).

The provision of the GAC system by Daikin will also provide substantial monetary savings to the Class.  If Daikin had not agreed to provide the GAC System, the Authority would have had to finance the System over a twenty-year period and

passed the cost of both the principal and interest on to customers in the form of increased rates. The resulting water rate increase would have cost the Class an additional $2 million in bond interest over the next 20 years. (*See* Ex. 10). Therefore, in addition to receiving safe water, the Class will receive a total of $6.0 million in monetary benefits as a result of the provision of the GAC System by Daikin. (*See* Ex. 10).

In addition, the Settlement will provide restitution of $450,000 to those members of the Class who are direct residential customers of the Authority and to those utilities that have continuously purchased water from WMEL in 2016 (namely, the Trinity Water Works, the Town Creek Water System, and the West Lawrence Water Cooperative). (*See* Ex. 1). This restitution is to reimburse those Class Members who are direct customers of the Authority for the billing for June 2016 during the period when the Authority advised them not to use their water before the temporary blending with Decatur Utilities water lowered the concentrations of PFOA and PFOS below the EPA Advisory Level. It will also reimburse the water utilities who continued to pay the Authority for water during this time period and allow the Authority to waive minimum monthly charges for those water utilities who discontinued purchasing water from the Authority, which will benefit these Utilities' customers, who are also Class Members. (*See* Ex. 10).

Finally, the Settlement will reimburse litigation costs, pay for the costs of

providing notice to the Class, and award attorney fees as approved by the Court. The maximum amount to be paid for these three items is $550,000. The total payment by Daikin, including the $4.0 million for the GAC System, the $450,000 for the credit for utility bills, and up to $550,000 for expenses and fees, is not to exceed $5 million. (*See* Ex. 1).

In exchange for this relief the Authority and the Class will enter a *pro tanto* Settlement with Daikin while retaining all other legal claims against the remaining Defendants in the action. The Settlement will release Daikin for any and all class claims and injuries included in the pending class action, including battery, but excluding claims for manifest personal injury, which are not included in the pending class action and are not intended to be part of this Settlement.[7] The release also excludes claims for property damage arising from the entry of PFCs on to property through mechanisms other than the delivery of domestic water from the Authority; such claims are also not a part of this case.

## V.     FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED.

### A.     <u>Standards for Final Approval of a Class Settlement.</u>

When exercising its discretion, pursuant to Rule 23(e), to approve a class settlement, the court should consider the public and judicial policies that strongly

---

[7] As noted above, the Court's Memorandum and Order of September 20, 2016, dismissed Plaintiffs' claims for personal injuries as part of their negligence claim for lack of ripeness, because the injuries complained of in the complaint were not "manifest personal injuries."

favor the settlement of class action lawsuits. *In re U.S. Oil and Gas Litig*., 967 F.2d 489, 493 (11th Cir.1992); *accord Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). "[I]t has been repeatedly recognized that settlements are 'highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits.'" *Bennett v. Behring Corp*., 96 F.R.D. 343, 348 (S.D. Fla. 1982), *aff'd*, 737 F .2d 982 (11th Cir. 1984) (*quoting Miller v. Republic Nat. Life Ins. Co*., 559 F.2d 426, 428 (5th Cir.1977)). Settlements in class action cases are also favored because they "conserve judicial resources by avoiding the expense of a complicated and protracted litigation process ...." *In re Motorsports Merch. Antitrust Litig*., 112 F.Supp.2d 1329, 1333 (N.D. Ga. 2000). While the proposed Settlement is a partial settlement, it still will conserve judicial resources by reducing the number of defendants and reducing the complexity of the litigation going forward.

The Eleventh Circuit has instructed that, in examining the fairness, adequacy, and reasonableness of a settlement, a district court should examine several factors, including: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *In re CP Ships Ltd. Securities*

*Litigation,* 578 F.3d 1306, 1317–18 (11th Cir. 2009) (*quoting Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984)). "Thus, the issues that bear upon whether or not to grant preliminary and final approval here are: a) whether the settlement was procured by collusion among the parties or was the result of arm's-length and informed bargaining; and b) whether the proposed settlement is fair, adequate and reasonable, applying the six *Bennett* factors." *Lipuma v. American Express Co.,* 406 F.Supp.2d 1298, 1315 (S.D. Fla. 2005). The Plaintiffs will address each of these issues in turn.

**B.     The Settlement was the Result of Arm's-Length and Informed Bargaining.**

In assessing whether the Settlement was the result of arm's length and informed bargaining, the representations of experienced counsel to the Court that the class action settlement was reached through arm's length negotiations, and that it was negotiated in an adversarial manner following substantial factual investigation, extensive legal analysis, and expert investigation, carry substantial weight, especially in the absence of any evidence of fraud or collusion in the settlement negotiations. *See e.g. Faught v. Am. Home Shield Corp.,* No. 2:07-CV-1928-RDP, 2010 WL 10959223, *18 (N.D. Ala. Apr. 27, 2010), *aff'd,* 668 F.3d 1233 (11th Cir. 2011), *quoting Carnegie v. Mutual Savings Life Ins. Co.,* 2004 WL 3715446, at *18 (N.D. Ala. 2004). Counsel for the settling parties in this case have made these representations to the Court in their declarations, and no issue of fraud or collusion

has been raised by any of the objectors.

The *Owens* Objectors have raised the question of a conflict of interest by Class Counsel due to their representation of both the Class Members and the Authority in this matter, pointing to a stayed state court case in which some purported Class Members have sued 3M, Daikin, and the Authority as a result of the contaminated water. As discussed thoroughly in Plaintiffs' response to the *Owens* objection, (*See* Doc. 87), there is no conflict because Class Counsel do not represent the Authority in the state court litigation and have vigorously represented the interests of the Class Members in this case, taking no positions or actions in this case that could be interpreted as being adverse to Class Members. (*See* Memorandum in Response to Objections of the *Owens* Plaintiffs to Class Action Settlement with Daikin America, Inc., Doc. 87).

**C.** **Application of the *Bennett* Factors**

**1.** **The Likelihood of Success at Trial.**

"The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma v. American Express Co.,* 406 F.Supp.2d 1298, 1319 (S.D. Fla. 2005). In evaluating this factor, the court should not reach any ultimate conclusions with respect to issues of fact or law involved in the case. "The very uncertainty of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to

compromise ... [Settlements] could hardly be achieved if the test on hearing for approval means establishing success or failure to a certainty." *Knight v. Alabama,* 469 F.Supp. 2d 1016, 1033 (N.D. Ala. 2006) (quoting *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 212 (5th Cir.1981)).

Risks are inherent in all litigation, particularly high stakes lawsuits like this one. The Court has weighed in on the sufficiency of the allegations of Plaintiffs' Amended Complaint and has upheld most and dismissed some, but obviously has not considered any evidence or expert testimony at this stage. Daikin, in both its motion to dismiss and its Answer, has raised several substantial defenses concerning the merits of Plaintiffs' claims and, absent a settlement, would likely continue to press those issues at the summary judgment stage and beyond. There would be a risk the Court could render judgment for Daikin on these substantive issues.

Moreover, evaluating dispositive motions and trying this case would not only involve uncertain outcomes at each one of those steps, but also would require a lengthy time commitment from the Court and the Plaintiffs. And, to say the least, a hearing or trial would not only be lengthy, but logistically complicated and tremendously expensive. For those reasons, the risks faced by the Plaintiffs weigh in favor of accepting the proposed Settlement, particularly as balanced against the substantial relief of an immediate, safe water supply.

**2.** **The Range of Possible Recovery and the Point on or Below the Range of Possible Recovery at Which a Settlement is Fair, Adequate and Reasonable.**

District courts often consider the next two factors together because they are related. *See, e.g., Knight,* 469 F. Supp. 2d at 1033; *Lipuma,* 406 F.Supp. 2d at 1322; *Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 541 (S.D. Fla. 1988). Analysis of these factors requires the court to compare the settlement terms "with the likely rewards the class would have received following a successful trial of the case." *Knight,* 469 F.Supp.2d at 1034. "When making this comparison, the Court should keep in mind that 'compromise is the essence of a settlement, and should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" *Id.* Here, as in most class actions, it is not only monetary relief that is difficult to quantify, but the range of possible recovery "'spans from a finding of non-liability through varying levels of injunctive relief.'" *Assoc. for Disabled Americans, Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 468 (S.D. Fla. 2002).

There is no doubt that the Settlement provides real, valuable and immediate benefits to the Class Members that are an adequate, fair, and reasonable compromise of their claims for injunctive relief against Daikin, and which are sufficiently related to the injunctive relief sought through the Class Claims, pursuant to Rule 23(b)(2).

Although a victory at trial might result in some additional or alternative relief against Daikin for Class Members, the proposed Settlement provides guaranteed benefits much sooner.

The Settlement is fair to Class Members, even though it does not provide all of the benefits that the Class Representatives initially sought. "Any settlement typically offers far less than a full recovery. Indeed, settlements, by their nature, do not yield one hundred percent recovery for plaintiffs." *Faught v. Am. Home Shield Corp.*, No. 2:07-CV-1928-RDP, 2010 WL 10959223, *14 (N.D. Ala. Apr. 27, 2010), *aff'd,* 668 F.3d 1233 (11th Cir. 2011). This is especially true in light of the Court's dismissal of any claims for personal injuries by the Class Members, which has reduced the amount of potential damages recoverable in this suit.

The *Owens* Objectors raise the issue, as did some of the Class Members who communicated by letter or telephone with Class Counsel, that the restitution provided to the Class Members in the form of a credit on their water bill is insufficient to compensate them for their damages. While the credit is a relatively small amount of compensation, Class Members are being provided a much greater financial benefit by avoiding the higher water charges they would have to pay in the future if the Authority had to pay for and finance the installation of the GAC treatment system. It is also important to note that the Settlement does not affect Class Members' claims against 3M and Dyneon, which, as noted below, are the primary

sources of the PFOA and PFOS in the Tennessee River.  (*See* Ex. 7, 8).

The timing of the Class benefits in the proposed Settlement also weighs heavily in its favor. Class members have received immediate guaranteed safe water, while avoiding significant immediate rate increases which would have lasted for twenty years.  It is uncertain that the Plaintiffs would achieve this relief from Daikin even after years of continued litigation.

Finally, Plaintiffs have evaluated the relative contribution of Daikin versus the other two Defendants to the contamination in their water supply as part of their evaluation of the fairness of the amount of the proposed Settlement. Based upon the review by expert environmental consultants of data provided by Daikin, as well as publicly available data, Plaintiffs believe that Daikin's contribution to the contamination of the Tennessee River with PFOA has been relatively minor, and that Daikin did not contribute at all to the contamination by direct discharge of PFOS. (*See* Ex. 7, 8, 9). Daikin's recent releases of PFOA and PFOS appear to be from stormwater contaminated by past sludge disposal by 3M on the property that Daikin purchased from 3M in 1991. (*See* Ex. 7, 8).

**3.      The Complexity, Expense and Duration of Litigation.**

This inquiry overlaps in some respects with the first *Bennett* factor— likelihood of success on the merits. In assessing this factor, "[t]he Court should consider the vagaries of litigation and compare the significance of immediate

recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *Lipuma,* 406 F.Supp.2d at 1323 (quoting *In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La.1993)). "Complex litigation ... can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992); *Lipuma,* 406 F.Supp.2d at 1323–24; *Woodward v. NOR-AM Chemical Co.*, No. Civ. 94–078019, 96 WL 1063670, *21 (S.D. Ala. May 23, 1996).

Again, the need for the immediate relief in the form of a safe water supply for the Class as compared to the potential of perhaps years of litigation to possibly achieve the same solution weighs in favor of approval of the Settlement.

**4.    The Substance and Amount of Opposition to the Settlement**

As discussed above, and detailed in the Declaration of Jeff Friedman, the substance and amount of opposition to the Settlement have been minor. Out of more than 17,000 Notices sent, there are only two formal written objections, and even if it is assumed that all approximately 300 *Owens* Plaintiffs are Class Members, the percentage of households filing written objections is less than 1.5 %. Adding in others who expressed objections in communications with Class Counsel by telephone or in writing would increase this number to approximately 1.8%. (*See*

Declarations of Jeffrey E. Friedman and Lee Patterson, Exs. 5, 6).

**5**.   **The Stage of Proceedings at Which the Settlement Was Achieved.**

Although this case is still in a relatively early stage, Plaintiffs have had the opportunity prior to and during the pendency of this matter for over a year and a half to thoroughly evaluate the likelihood whether their claims will succeed on the merits. Defendants' environmental discharges are the subject of voluminous public filings with regulatory agencies, so formal discovery is not necessary to obtain much of the crucial information. (*See* Ex. 12). Formal discovery is not essential to judicial approval where class counsel otherwise have sufficient information to evaluate the proposed settlement. *In re Corrugated Container Antitrust Litig*., 643 F.2d 195, 211 (5th Cir.1981), *cert. denied*, 456 U.S. 998 (1982). Plaintiffs are represented by experienced counsel who understand the time and expense that continued litigation, trial and possible appeal would require in this complex case. Given that they have had the opportunity to evaluate these issues with experienced counsel, this factor weighs in favor of approving the settlement.

**VI.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.**

The Court should certify the Settlement Class as part of its final approval of the Settlement. The U.S. Supreme Court has emphasized that the district court may not disregard the requirements of Fed. R. Civ. P. 23(a) and (b) in certifying a settlement class. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620-622 (1997).

The Class should be certified, because it meets the requirements for class certification under Fed. R. Civ. P. 23.

**A.    The Settlement Class Definition.**

As set forth in this Court's Preliminary Approval Order, the Settlement Class conditionally certified was defined as:

> all owners and possessors of property as of February 21, 2017, who use water provided by the West Morgan-East Lawrence Water and Sewer Authority, the V.A.W. Water System, the Falkville Water Works, the Trinity Water Works, the Town Creek Water System, and the West Lawrence Water Cooperative.

**B.    Rule 23(a) Requirements Are Satisfied.**

Under Fed. R. Civ. P. 23(a), a class may be certified if "(1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly." *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1187–88 (11th Cir. 2003). These four prerequisites are generally known as "numerosity, commonality, typicality, and adequacy of representation." *Id.* at 1188. While the prerequisites are often discussed in isolation, the inquiries necessary to determine whether they are met tend to overlap. *See Amchem Prods.,* 521 U.S. at 626 n. 20 ("The adequacy-of-representation requirement tends to merge with the commonality and typicality

criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.")

Each of the Rule 23(a) requirements is satisfied in the instant case. The numerosity element requires that the members of the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, there can be little doubt about numerosity of the class. As the Declaration of Don Sims states, there are 25,000 to 35,000 individual customers served by the Authority directly. In addition, The Authority provides water on a wholesale basis to the other utilities named in the Class Definition. The numbers for these other utilities have been revised since the Motion for Preliminary Approval during further consultation with these other utilities for acquiring the mailing lists for the Notice of Settlement.[8] Notices of the proposed Settlement went out to over 17,000 customers' addresses, which equates to approximately 42,500 individual Class Members (assuming, at a

---

[8] Some VAW customers have been, and continue to be, provided water from the Cullman Utilities Board and since those customers have not and do not take any water from WMEL, they were not provided Notice and are not included in the definition of the Class in this case. Likewise, in studying customer lists of the West Lawrence and Falkville water districts, it was determined that approximately half of West Lawrence customers are provided water by Moulton, Alabama Utilities and Russellville, Alabama Utilities. For Falkville, two thirds of their overall water and sewer customers are provided water that originates from Hartselle Utilities and not WMEL. Accordingly, the overall estimated number of Class Members from VAW, West Lawrence and Falkville water districts has been reduced to a number of WMEL accounts from 11,235 to 5,488. (*See* Declaration of Jeffrey E. Friedman, Ex. 5).

minimum, an average of 2.5 persons per address, as did Mr. Sims in his Declaration, Ex. 10). This number is sufficiently numerous to meet the requirements of Rule 23(a). *See Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986).

"Commonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Williams v. Mohawk Indus.,* 568 F.3d 1350, 1355 (11th Cir.2009) (quoting *Stewart v. Winter,* 669 F.2d 328, 335 (5th Cir.1982)). There are several common issues here, including (a) the factual history of the use, development, and distribution of PFOA, PFOS, and related chemicals manufactured and used by the Defendants at their Decatur, Alabama, facilities; (b) when the Defendants knew of the harmful effects of PFOA, PFOS, and related chemicals; (c) whether the Defendants failed to disclose the harmful effects of PFOA, PFOS, and related chemicals being released from their plants in Decatur, Alabama; (d) the extent of the contamination at the Defendants' plant sites in Decatur, Alabama, and the migration of that contamination into the Tennessee River; (e) whether the water supplied to Representative Plaintiffs and Class Members has been and continues to be contaminated with PFOA, PFOS, and related chemicals; (f) whether the Defendants' conduct constitutes a continuing nuisance; (h) the necessary remedial actions to prevent Defendants' chemicals from continuing to enter Representative Plaintiffs' and Class Members' water supplies; and (i) the appropriateness of injunctive relief to prevent Defendants' chemicals

from continuing to enter Representative Plaintiffs' and Class Members' water supplies. See Consolidated Complaint. These common questions of fact and law are sufficient to meet the "low hurdle of Rule 23(a)(2)." *Williams,* 568 F.3d at 1356.

Typicality is satisfied if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* at 1357 (*quoting Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984)). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Id.* (quoting *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001)). Here, the Representative Plaintiffs' claims and the claims of the Class Members arise from the same alleged drinking water contamination, and all of the claims are based on the same legal theories.

"The adequacy-of-representation requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1189 (11th Cir. 2003)). There are no conflicts of interest between the Class Representatives and Class Members, and the Class Representatives have continued to vigorously prosecute this action. (*See* Exs. 2-4). Moreover, Plaintiffs' attorneys have

demonstrated extensive experience as litigators in federal court class action litigation and have been appointed by the Court as Interim Class Counsel. *See* Doc. 63.

## C.   <u>Rule 23(b) Requirements Have Been Satisfied</u>.

The proposed class must also meet the requirements of at least one of the three class types found in Fed. R. Civ. P. 23(b). Here, Plaintiffs move for the certification of a Rule 23(b)(2) settlement class for injunctive relief.[9]

Rule 23(b)(2) provides that a class action is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class," and the representatives are seeking "final injunctive relief or corresponding declaratory relief." Fed. R. Civ. P. 23(b)(2). Certification of a class under Rule 23(b)(2) is appropriate where the remedy sought is "an indivisible injunction" that applies to all class members "at once." *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 360 (2011).

There are two basic factors that must be present in order for an action to fall within Rule 23(b)(2): (1) the opposing party's conduct or refusal to act must be "generally applicable" to the class and (2) final injunctive or corresponding declaratory relief must be requested for the class. For "generally applicable," the key

---

[9] Certification under Rule 23(b)(3) would also be appropriate. But when certification is proper under both of subsections (b)(2) and (b)(3), a court should certify the class under (b)(2) because of the broader *res judicata* effect of a judgment in a mandatory class. *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 447 (5th Cir. 1973); *Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705, 712 (D. Ariz. 1993). If the Court does not believe Rule 23(b)(2) certification is appropriate, Plaintiffs request the opportunity to brief separately the issue of certification under Rule 23(b)(3).

is whether the party's actions affected all persons similarly situated so that those acts apply generally to the whole class. The second prerequisite to bringing an action under Rule 23(b)(2) is that final injunctive or declaratory relief must be requested against the party opposing the class. Injunctive relief embraces all forms of judicial orders, whether mandatory or prohibitory. 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1775 (3rd ed. 2016).

In the instant case, Plaintiffs have alleged that the chemicals released by Daikin into the Tennessee River have contaminated the Authority's water supply, which affects all users of water supplied by the Authority, including the users of water from the utilities that are wholesale customers of the Authority. This water is distributed by the Authority and its wholesale purchasers to all Class Members. Therefore, all of the Class Members have been affected in the same way by Daikin's releases of chemicals.

The primary injunctive relief in the proposed Settlement is the creation of a fund to pay for a GAC System installed by the Authority to treat all of its water to remove PFOA and PFOS to concentrations below the EPA Drinking Water Health Advisory level.[10] This injunctive relief provides the benefit to all Class Members of safe, drinkable water. As discussed hereinabove, it also provides substantial benefits

---

[10] This relief was requested in Paragraph 94 of the Consolidated Complaint, which states: "The Court should issue an injunction requiring Defendants to remove their chemicals and toxins from the water supplies of Plaintiffs and to prevent these chemicals and toxins from continuing to contaminate Plaintiffs' water supplies …" *See* Doc. 66.

in reducing the future water bills of all class members by reducing the Authority's borrowing costs for the money it would otherwise have had to borrow to install the GAC System, which would have been passed on to the Class Members. Significantly, these are benefits that <u>necessarily</u> accrue to the Class Members by virtue of their being customers of the Authority. Even if they were to opt out of a litigation-defined class, they would still receive the benefits because of the inherent nature of the relationship between the Authority and its customers. A Class Member cannot refuse to accept clean water delivered by the Authority. Nor can a Class Member refuse the benefit of avoiding future rate increases that would be necessary but for the settlement.

In another case involving PFOA contamination of drinking water, a federal court in New Jersey certified an injunctive relief settlement class where the defendant created an $8.3 million fund to provide home water filters to members of the class of water users. *See Rowe v. E.I. DuPont de Nemours and Co.*, 2011 WL 3837106, Nos. 06–1810, 06–3080 (D. N.J. Aug. 26, 2011). There, the court certified the settlement class under Rule 23(b)(2), despite the fact that the defendant was creating a fund of money to pay for the filters. *See also Williams v. Nat. Sec. Ins. Co.*, 237 F.R.D. 685, 694 (M.D. Ala. 2006), in which the court certified a settlement class under 23(b)(2) in a civil rights case alleging discrimination in issuing insurance policies. The relief included a refund of overpayments to make the class whole.

In addition to the injunctive relief provided by the present Settlement, there is restitution to be provided to class members of $450,000 for water bill payments for the month of June 2016 during the time when the Authority had advised them not to use their water for drinking and cooking purposes as a result of the EPA Drinking Water Health Advisories. This credit or refund is incidental to the injunctive relief and may be awarded as part of a 23(b)(2) class settlement.

While class certification based on claims for individualized monetary relief is impermissible under Rule 23(b)(2), the Supreme Court has left open the question whether incidental monetary relief may be sought on a class-wide basis pursuant to Rule 23(b)(2). *Dukes*, 564 U.S. at 366. The Eleventh Circuit has not addressed this question yet post-*Dukes*, but other circuits have concluded that such relief may be appropriate where it "flow[s] directly from liability to the class as a whole" from "claims forming the basis of ... injunctive or declaratory relief." *Amara v. CIGNA Corp.*, 775 F.3d 510, 519-20 (2nd Cir. 2014) (*Dukes* "does not foreclose an award of monetary relief when that relief is incidental to a final injunctive or declaratory remedy"). S*ee also Johnson v. Meriter Health Servs. Emp. Ret. Plan,* 702 F.3d 364, 371 (7th Cir.2012) (concluding that incidental monetary relief may be awarded in a Rule 23(b)(2) class action pursuant to a pension plan's reformation); and *Berry v. Schulman*, 807 F.3d 600, 609-10 (4th Cir. 2015) (Rule 23(b)(2) class settlement upheld where settlement dealt with significant injunctive relief and statutory

damages – what matters is that defendant's conduct "was uniform with respect to each of the class members").

In the instant case, Daikin's alleged conduct in polluting the water supply was uniform with respect to each member of the class. The uniform injunctive relief is the requirement that Daikin provide a safe water supply to the entire class by funding installation of the GAC System. The restitution to class members flows directly from the alleged liability to the class as a whole, because the need for restitution resulted from charges during the time when members of the class were unable to use their water due to the contamination.

## VII. THE NOTICE TO CLASS MEMBERS SATISFIED RULE 23(e).

"[R]ule 23(e) requires that absent class members be informed when the lawsuit is in the process of being voluntarily dismissed or compromised." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1317 (11th Cir. 2012). The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–812 (1985). It is well established that a district court has great discretion in determining the kind of notice to employ in alerting class members to a proposed settlement and settlement hearing, subject to "the broad reasonableness standards imposed by due process." *Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1059 (5th Cir.1979); *Battle v.*

*Liberty National Life Insurance Company*, 770 F. Supp. 1499, 1521 (N.D. Ala. 1991).

For 23(b)(2) classes, the Court does not have to order individual notice. Fed. R. Civ. P. 23(c)(2)(A). *Battle*, 770 F. Supp. at 1517. Nevertheless, Plaintiffs in this case have opted for individual notice and implemented the Notice Plan approved by the Court. Furthermore, for 23(b)(2) classes, the Court does not have to provide the opportunity for Class Members to opt out, and the approved Notice did not do so.[11]

The approved Notice contains sufficient information to satisfy the requirements of Fed. R. Civ. P. 23(e)(3). The Notice incorporates the "plain language" guidelines and incorporates elements of the illustrative notice forms that the Federal Judicial Center developed for use in federal courts. The notice contains clear and concise information about the settlement, including: (a) the fact of the settlement of the claims; (b) a definition of the class; (c) a summary of the settlement benefits; (d) a brief description of the case; (e) a statement concerning how attorneys'

---

[11] The Plaintiffs have cited *Rowe v. E.I. DuPont de Nemours and Co.* as an example of a Rule 23(b)(2) settlement in a case similar to this one where a fund was provided for water filters for individual class members. In *Rowe*, the settling parties agreed among themselves to give absent class members the right to opt out of the class (and the settlement benefits), which is unorthodox but permissible for a Rule 23(b)(2) class. *See Rowe*, 2011 WL 3837106 at *2 n.10. Providing an opt-out right perhaps made sense in *Rowe*, where the class members were allowed to take the settlement benefit in the form of either a water filter or an unrestricted cash payment equivalent to the cost of the filter. *Id.* at *2. That arrangement made the settlement very close, as a practical matter, to one involving straight monetary damages. Damages cases are normally certifiable only under Rule 23(b)(3), which requires that class members be given the right to opt out. In the present case, an opt-out right is not appropriate because, as explained above, Class Members cannot avoid receiving the benefits of the settlement.

fees will be paid; (g) the options available to the class members, including their right to obtain independent counsel at their expense; (h) the deadlines by which the class members needed to object, (i) and the date, time, and location for the fairness hearing.

As set out in detail in the Declaration of Jeff Friedman, Ex. 5, the Notice was received by all Class Members. A total of 17,008 Notices were sent, with no returns. The Notice mailing complied with the Court's deadlines in the Preliminary Approval Order. Neither the objectors nor other Class Members who communicated with Class Counsel complained about the adequacy of the Notice. Finally, the required notices were provided pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, by Daikin's counsel. (*See* Ex. 13).

In sum, the Class Notice offered adequate overview of the Settlement, provided necessary detail, and reasonably advised the Class Members where they could obtain additional information. The notice is simple, easy to understand, and accurately summarizes the key elements of the Settlement. The approved Notice Plan was successfully implemented, and all the Class Members received Notice.

## VIII.   ATTORNEY FEES AND EXPENSES

Class Counsel has filed a separate motion, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, seeking an award of reasonable attorneys' fees and expenses incurred in connection with representation of the Class Members in this

matter. As set out in the Court's Preliminary Approval Order, the motion will be available for all Class Members and the Court to review and respond to prior to the final Fairness Hearing.

## IX.    CONCLUSION

Plaintiffs respectfully request that the Court grant final approval of the Settlement and find, based on the Court's review and the fairness hearing, that the Settlement is fair and reasonable and meets the requirements for approval under Rule 23(e), as well as the Eleventh Circuit's *Bennett* factors. Plaintiffs also request the Court to certify the proposed class for purposes of the Settlement and find that the implementation of the Notice Plan and the Class Notice satisfy due process and Rule 23 of the Federal Rules of Civil Procedure.

A proposed Order approving the Settlement is attached as Exhibit 14.

Respectfully submitted.

*/s/ Gary A. Davis*
Gary A. Davis, NC Bar No. 25976
(*Pro Hac Vice*)
James S. Whitlock, NC Bar No. 34304
(*Pro Hac Vice*)
Douglas A. Ruley, NC Bar No. 14425
(*Admission Requested Pro Hac Vice*)
DAVIS & WHITLOCK, P.C.
21 Battery Park Ave., Suite 206
Asheville, NC 28801
T: (828) 622-0044
F: (828) 398-0435
gadavis@enviroattorney.com
jwhitlock@enviroattorney.com

druley@enviroattorney.com

Jeff Friedman (ASB-6868-N77J)
Lee T. Patterson (ASB-5482-E47P)
FRIEDMAN, DAZZIO, ZULANAS &
BOWLING, PC
3800 Corporate Woods Drive
Birmingham, Alabama 35242
T: 205-278-7000
F: 205-278-7001
jfriedman@friedman-lawyers.com
lpatterson@friedman-lawyers.com

Carl Allen Cole, III (ASB-1309-R75C)
The Cole Law Firm, LLC
P.O. Box 2064
Decatur, Alabama 35602-2064
T: 256-353-0550
F: 256-353-0552
carl@carlco

ATTORNEYS FOR THE WEST
MORGAN-EAST LAWRENCE WATER
AND SEWER AUTHORITY AND CLASS
COUNSEL

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

Mr. Steven F. Casey
JONES WALKER LLP
1819 5th Ave North, Suite 1100
Birmingham, AL 35203
scasey@joneswalker.com

Mr. Christopher Yeilding
BALCH & BINGHAM, LLP
P.O. Box 306
Birmingham, AL 35201-0306
cyeilding@balch.com

Mr. Robert J. Shaughnessy
WILLIAMS & CONNOLLY LLP
725 12th Street NW
Washington, DC 20005-5901
bshaughnessy@wc.com

Mr. M. Christian King
Mr. Harlan I. Prater, IV
Mr. William S. Cox, III
Mr. William H. Brooks
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200
cking@lfwlaw.com
hprater@lfwlaw.com
wcox@lfwlaw.com
mbrooks@lfwlaw.com

Mr. William A. Brewer, III
Mr. Michael J. Collins
Ms. Stephanie L. Gase
BREWER ATTORNEYS & COUNSELORS
1717 Main Street, Suite 5900
Dallas, Texas 75201
wab@brewerattorneys.com
mjc@brewerattorneys.com
szg@brewerattorneys.com

/s/ *Gary A. Davis*
Attorney