# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **TOMMY LINDSEY, LANETTE LINDSEY and LARRY WATKINS,** individually, and on behalf of a class of persons similarly situated )<br><br>Plaintiffs, )<br><br>v. )<br><br>**3M COMPANY, DYNEON, L.L.C., and DAIKIN AMERICA, INC.,**<br><br>Defendants. ) | Civil Action Number<br>**5:15-cv-01750-AKK** |

## MEMORANDUM OPINION AND ORDER

Tommy Lindsey, Lanette Lindsey, and Larry Watkins (collectively "Representative Plaintiffs") bring this diversity jurisdiction action individually and on behalf of a class of persons similarly situated.[1] The Authority and Representative Plaintiffs (collectively "Plaintiffs") assert common law claims of negligence (Count I), nuisance (Count II), abatement of nuisance (Count III), battery (Count IV), trespass (Count V), and wantonness (Count VI) against 3M Company, Dyneon, L.L.C., and Daikin America, Inc. Doc. 175. The day after the Plaintiffs filed their

---

[1] The proposed class consists of all owners and occupants of residential of property who use water provided by the West Morgan-East Lawrence Water and Sewer Authority, the V.A.W. Water System, the Falkville Water Works, the Trinity Water Works, the Town Creek Water System, and the West Lawrence Water Cooperative. Doc. 175 at 19-20.

third amended complaint, they filed an "Errata" to correct "errors identified" in the complaint. *See* doc. 176. Currently before the court is 3M and Dyneon's motion to dismiss portions of the third amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Doc. 181. Specifically, the Defendants move to all attempts by the Plaintiffs to seek damages for "diagnostic testing" and the claim for trespass (Count V). *See generally* doc. 181. For the reasons stated more fully below, the motion is due to be granted.

Briefly, this action arises out of the Defendants' discharge of wastewaters containing perfluorooctanoic acid (PFOA), perfluorooctanesulfonic acid (PFOS), and related chemicals into the Tennessee River near Decatur, Alabama. Doc. 175 at 1-2. The parties are well familiar with the Plaintiffs' allegations, and the court will not recite here as a result, except to add that the representative Plaintiffs and the proposed class are owners or possessors of property who consume water supplied by the Authority and other water utilities that receive water from the Authority. Doc.

---

[2] Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). **Error! Main Document Only.**A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

175 at 4. They allege personal injuries from their exposure to unsafe levels of PFOA and PFOS in their domestic water supplies, including elevated levels of those chemicals in their blood serum. *Id.* at 17. Relevant to the current motion, in addition to personal injuries, the Plaintiffs claim also "the need for reasonabl[e] future expenses in the form of diagnostic testing[.]" *Id.* at 18.

### A.

The Plaintiffs seek damages for diagnostic testing in their claim for negligence (Count I)—damages "in the form of the cost of diagnostic testing to determine the harm from their exposure" to Defendants' toxic chemicals, doc. 175 at 25-26, and in Count IV—"economic harm caused by the Defendants' battery, including the cost of diagnostic testing to determine the harm from their exposure," *id.* at 30. The Defendants contend that the Plaintiffs cannot recover for costs incurred through diagnostic testing because Alabama does not recognize such a claim without a present physical injury. Doc. 181 at 2. The court agrees.

As this court explained in its previous ruling on the first amended complaint, Alabama law requires that plaintiffs *currently* have a disease as a result of exposure in order to recover in tort.[3] Indeed, in *Hinton*, the Alabama Supreme Court rejected

---

[3] *See* doc. 65 (citing *Hinton v. Monsanto Co.*, 813 So. 2d 827, 829 (Ala. 2001) ("Alabama law has long required a manifest, present injury before a plaintiff may recover in tort."); *Houston Health Care Authority v. Williams*, 961 So. 2d 795, 810–12 (Ala. 2006) (alleged emotional distress consisting "simply" of fear of possible future infection from known exposure to fungus in a contaminated breast implant, without more, did not constitute a compensable legal injury); *Southern Bakeries, Inc. v. Knipp*, 852 So. 2d 712, 717–18 (Ala. 2002) (mere fear that exposure to

the plaintiff's contention that he could recover for "medical monitoring" without a "manifest, present injury." 813 So. 2d at 829. The Plaintiffs seek to avoid this conclusion by arguing that *Hinton* does not bar their claim for diagnostic testing because they "do not seek to establish a 'distinct cause of action' for medical monitoring" but rather that the Defendants' actions "ha[ve] caused a current injury, burdening the Plaintiffs with the need to incur the cost of diagnostic testing to detect latent diseases caused by that exposure." Doc. 186 at 7. But the *Hinton* plaintiff made the same argument, i.e. that "the cost of all reasonable medical expenses necessarily incurred as a result of tort are recoverable under Alabama law." 813 So. 2d at 829. And the Alabama Supreme Court rejected this reasoning, finding that these costs are inherently "based upon nothing more than an increased risk that an injury or an illness might one day occur," and concluding that such costs alone cannot merit their own cause of action under Alabama tort law. *Id.*

Moreover, the Eleventh Circuit rejected the Plaintiffs' distinction in *Looney v. Moore*, 886 F.3d 1058 (11th Cir. 2018). The Eleventh Circuit found that plaintiffs who "attempt[ed] to distinguish [*Hinton* and its progeny] by describing their injury as being the increased risk of harm they faced *in the past* . . . only highlight[ed] the weakness of their position." 886 F.3d at 1063 (emphasis in original). The court

---

asbestos could lead to asbestos-related disease, without more, did not constitute a compensable injury)).

4

reasoned "[w]hether in the past or in the future, [the Plaintiffs] can show, at most, only an increased risk of harm, not a probability that [the Defendants' actions] actually caused any harm." *Id.* (citing *Knipp*, 852 So. 2d 716, 716-17 & n.7 (Ala. 2002)). In other words, whether the costs they have incurred or will incur are through diagnostic testing or medical monitoring, those costs rest solely on risk, not on present injury. Therefore, under *Looney* and prevailing Alabama precedent, because the Plaintiffs do to not allege a present injury, they cannot recover for costs associated with diagnostic testing. Any claims for remedies of these costs are due to be dismissed.[4]

**B.**

The Defendants next move for dismissal of the trespass claim (Count V),

---

[4] The Plaintiffs attempt to cast doubt on *Hinton* by citing more recent persuasive authority from other states and circuits that allow tort remedies without a present physical injury is unavailing. *See* doc. 186 at 9-15. *Hinton* remains controlling, as courts in this state and this circuit, including this court, have consistently acknowledged. *See, e.g., Looney*, 886 F.3d at 1063 (citing *Hinton* to find plaintiffs' claims for increased risk of injury were "not viable under Alabama law"); *West Morgan-East Lawrence Water and Sewer Authority v. 3M Company*, 208 F. Supp. 3d 1227, 1233, 1237 (N.D. Ala. 2016) (dismissing the Plaintiffs' claim for personal injuries for lack of ripeness as they did not allege a present injury); *Griffin v. Unocal Corp.*, 990 So. 2d 291, 308-309 (Ala. 2008) (overruling a decision that contradicted *Hinton*'s scheme). The Plaintiffs are certainly correct that Alabama differs from many jurisdictions in its treatment of medical monitoring. *See Looney*, 886 F.3d at 1063. As the Eleventh Circuit put it, "[s]o strict is Alabama law on this point that Alabama courts have even rejected 'medical monitoring' claims, in which plaintiffs allege that because prior medical procedures increased their risk of future harm, they were 'injured' by the need, going forward, to self-monitor in order to detect future medical ailments." *Id*. This is a decision, however, that Alabama made with full knowledge that other jurisdictions disagree: "we acknowledge that other jurisdictions have recognized medical monitoring as a distinct cause of action or as a remedy under other tort causes of action, even in the absence of a present physical injury." *Hinton*, 813 So. 2d at 829. That Alabama stands apart from its peer jurisdictions in this respect does not absolve this court sitting in diversity of its duty to uphold the state's law.

arguing that this claim is barred by this court's previous order dismissing this claim with prejudice, or, alternatively, because Plaintiffs fail to plausibly plead a claim for trespass. Doc. 181 at 4.[5] Indeed, this court previously found that the Plaintiffs failed to state a claim under Alabama trespass law due to their failure to allege "physical or structural damage to the res," and dismissed the claim with prejudice. *See West Morgan*, 208 F. Supp. 3d at 1235-36, 1238. *Id.* at 1235. Having so ruled, the court does not believe it can revisit this issue through an amended complaint.[6]

Alternatively, to the extent the court can even revisit this issue after a dismissal with prejudice, the repleaded trespass claim is also due to be dismissed. The trespass claim[7] in the third amended complaint differs from the one in the first amended complaint only in the assertions that the "Defendants' manufacturing, use, and disposal operations have physically intruded onto [and] physically altered the physical aspects of the Plaintiffs' and Class members' properties [and that] [t]his

---

[5] The Defendants also argue that "[the] Plaintiffs have failed to allege a right to exclusive possession of the property, as is required to satisfy the first element of their claim." Doc. 181 at 5. The court notes that the Plaintiffs state multiple times in the third amended complaint that they reside at the property at issue. *See* doc. 175. In any event, the Defendants do not dispute the Plaintiffs' retort in their reply, thereby abandoning this claim.

[6] A dismissal with prejudice, which is synonymous with a dismissal "on the merits," *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990), may have res judicata effect. *See Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003); *see also Montana v. United States*, 440 U.S. 147, 153-54 (1979).

[7] Again, the Plaintiffs' claim must be construed as one for indirect, as opposed to direct, trespass. "[A]n indirect trespass occurs where the trespasser releases a 'foreign polluting matter' beyond the boundaries of his property, knowing to a 'substantial certainty' that it will invade the property." *Russell Corp. v. Sullivan*, 790 So. 2d 940, 946–47 (Ala. 2001) (quoting *Rushing v. Hooper-McDonald, Inc.*, 300 So. 2d 94 (Ala. 1974)).

physical alteration is substantial damage." Doc. 175 at 31. This basic assertion is a mere recitation of the elements of the claim,[8] and fails to allege substantial damage to the res.[9]

The Plaintiffs' subsequent attempt to fix the amended complaint through an Errata, doc. 176, is also improper.[10] Errata sheets are most commonly used to clarify or correct deposition testimony "if there are changes in form or substance." Fed. R. Civ. P. 30(e)(1)(B). However, errata sheets cannot "be used to make material, substantive changes, except in situations where there is a clerical error or the like." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1281-82 (11th Cir. 2010) (collecting cases holding that errata sheets may be used for corrective, rather than contradictory or substantive, changes to deposition testimony); *see, e.g.*, *Jacobs v. Chadbourne*, 733 F. App'x 483, 486 (11th Cir. 2018) (affirming a district court's dismissal of an errata that made substantive changes to deposition testimony). And, an "Errata" is not a proper vehicle to add factual allegations to a complaint. *See* doc. 187 at 5 n.2 (citing

---

[8] *See, e.g. Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (citing *Iqbal*, 556 U.S. at 678).
[9] *See Borland v. Sanders Lead Co., Inc.*, 369 So. 2d 523 (Ala. 1979).
[10] The Plaintiffs attempt to add the following sentences: "Specifically, the chemicals the Defendants have discharged and continue to discharge permeate the properties of the Representative Plaintiffs and Class Members. The chemicals remain on and in the properties, contaminating and degrading the soil, which is substantial damage." Doc. 176 at 2. In the Errata, the Plaintiffs state that "[p]aragraph No. 84 contains scrivener errors and omissions," characterizing the additional sentences as "correct[ions]." *Id.* at 2. However, in their response to Defendants' motion to dismiss, the Plaintiffs explain for the first time that, on the day their third amended complaint was due, they had not yet received the environmental impact report they had rush ordered weeks earlier. Doc. 186 at 6-7; *see* docs. 186-1; 186-2. The Plaintiffs describe the Errata as an effort to "express[] [their trespass claims] more precisely" based on the newly-received report. Doc. 186 at 7.

7

*Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1238 (S.D. Fla. 2008), *aff'd*, 329 F. App'x 257 (11th Cir. 2009) ("attempts to interpose new allegations . . . through subsequent pleadings and argument are improper" and "would make the procedures for a formal amendment of a complaint set forth in the Federal Rules meaningless")).

Therefore, 3M and Dyneon's motion to dismiss the remedy claims for diagnostic testing and the repleaded trespass claim the court previously dismissed, doc. 181, is **GRANTED**. The court will reserve ruling on the sufficiency of the class allegations until a later date. *See United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 882 (11th Cir. 2003) (stating, in the context of ruling on a Rule 12(b)(6) motion, that "[i]n a class action, it is sufficient that a complaint generally give the defendant notice of the nature and scope of the plaintiffs' claims; it is not necessary that the class representatives plead evidence or otherwise meet any burden beyond the minimal Rule 8 standard.").

**DONE** the 26th day of March, 2020.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE